Winona L. ST. CLAIR, Plaintiff,

v.

Shirley S. CHATER, Commissioner of Social Security, Defendant.

Civil No. 96–4094–RDR.

United States District Court, D. Kansas.

March 17, 1997.

Molly M. Wood, Legal Aid Society of Topeka, Inc., Topeka, KS, for Plaintiff.

Jackie A. Rapstine, Office of U.S. Attorney, Topeka, KS, for Defendant.

### MEMORANDUM AND ORDER

Rogers, District Judge.

This is an action appealing the decision of the Commissioner of Social Security to deny plaintiff's application for supplemental security income benefits under the Social Security Act. The following information is pertinent to plaintiff's application.

Plaintiff's claim for social security benefits was filed effective on December 8, 1992. Plaintiff was born in 1952. She is a high school graduate of average intelligence.

Plaintiff's first husband died and she has since remarried. Plaintiff had four children with her first husband. All of these children are now adults and do not live with plaintiff. Plaintiff has not had children with her second husband.

Plaintiff has never held a substantial job which produced a significant income. She did work as a motel manager in 1977 and 1978, but received only free rent in return for her work.

Plaintiff has diabetes for which she takes medication. She is obese. On February 9, 1995 when plaintiff testified before the Administrative Law Judge, she said she weighed 270 pounds. Plaintiff is 5 feet 8 inches tall. Although the record (Tr. 198) indicates that plaintiff weighed 292 pounds on July 18, 1994[1], most of the weights recorded since plaintiff's application for benefits are between 270 and 285 pounds. In 1988 plaintiff weighed 206 pounds. In 1986 she weighed 325 pounds. Her obesity limits her ability to bend forward.

Plaintiff complains of shooting pains as well as numbness in her arms and legs. The numbness has been related to plaintiff's diabetes. The sharp pain could be related to diabetes or arthritis, but the record is not clear as to the cause of this problem. Plaintiff has testified that she has arthritis in her back and hips. Plaintiff seems to tire easily.

In 1983 or 1984, plaintiff fractured her left ankle. This causes plaintiff some discomfort if she stays on her feet for a lengthy period.

Plaintiff has difficulty sleeping and is troubled by depression, anxiety and an inability to concentrate. Plaintiff's mental impairments may be related to a history of childhood sexual abuse, as well as plaintiff's physical abuse of her son. However, there is also evidence that plaintiff's relationship with her current husband, who is an alcoholic, is not satisfactory. Plaintiff is not under treatment for mental or emotional problems.

Plaintiff does some housekeeping such as cooking, cleaning and laundry. She does shopping. She visits friends and family on occasion.

On January 8, 1993, an x-ray report of plaintiff's back divulged:

> There are some degenerative changes of L3 through S1, with narrowing of the disc space between L5 and S1, with a vacuum disc phenomenon present. There are degenerative changes of the posterior elements of L4 through S1 with slight Grade I anterior displacement of L5 on S1.

(Tr. 126).

On March 13, 1993, a radiology report regarding x-rays of plaintiff's back stated:

> Vertebral height is satisfactory. There is a grade I spondylolisthesis, with associated spondylolysis, at the L5 level. There is moderately pronounced narrowing of the lumbosacral disc space with mild spurring and eburnation of opposing end plates. Remaining disc spaces are adequately maintained, although minimal additional anterior end plate ostephytosis is noted at L2–3 and L3–4. I see no abnormalities affecting the posterior elements of segments L1 through 4. Sacroiliac joints are not included on the provided images.

(Tr. 105).

Also, on March 13, 1993, following a consultative examination, Dr. Daniel Thompson reported that plaintiff described no symptoms associated with diabetes and that there was no history of ketoacidosis. He further

---

1. The following day plaintiff's weight is reported as 284. (Tr. 186).

stated that plaintiff told him she could sit or stand for two hours at a time, walk six blocks at a time, and occasionally lift twenty pounds. (Tr. 106). After examination, Dr. Thompson found that plaintiff's motor function was normal and there was no loss of sensation to light touch. He concluded there was no diabetic sensory or motor neuropathy. He further observed only mild or moderate difficulty with: getting on or off the examining table; heel and toe walking; squatting and arising from a sitting position; and hopping. (Tr. 108).

Dr. Sharon McKinney, a doctor of osteopathy, made another consultative examination of plaintiff. She reported on June 30, 1993 that plaintiff had a full range of motion in her lower and upper extremities and that plaintiff's ambulation was okay. She concluded:

This lady may well have some arthralgia type pain in her feet as she is very overweight and has always worked in standing type activities plus she has the history of left ankle injury which undoubtly (sic) will bother her if she is tired and has been standing all day. She also may be beginning to have early diabetic neuropathy hence the minimal sharp/dull discriminatory changes. I don't have any way to assess the complaints of memory problems but she appears to be at least functional in that area. She shouldn't be doing a job that involves standing all day. She should not be lifting weights or carrying weights beyond 20 to 25 lbs. Because of her obesity she will have some trouble with stooping and bending and shouldn't be doing a job that requires lots of that. She should not be doing stair climbing or ladder climbing. Captive standing is definitely out. I don't really see any problem with upper extremity function and I think this lady should be able to do a sedentary type work. I think she will not do well however at high stress type jobs.

(Tr. 111).

An assessment of plaintiff's mental capacity by R. Blum, Ph.D. stated:

Her depression seems linked to family difficulties. It seems reasonable to expect that as those situational factors are resolved, her mood will improve.

Even with the depressive symptoms, she is capable of understanding simple and detailed instructions. Her concentration is slightly below average but sufficient for simple unskilled work.

(Tr. 141). Plaintiff's mental impairments were rated as: slightly restricting plaintiff's activities of daily living; causing moderate difficulty in social functioning; and often creating deficiencies of concentration. (Tr. 150).

Plaintiff was also evaluated by Linda A. Dunn, Ph.D. She diagnosed plaintiff as having moderate depression. She concluded:

She is able to care for her personal hygiene and personal needs. However, she does seem emotionally overwhelmed and her thinking was mildly tangential. Her attention and concentration were slightly below average. It does not appear that she would have overt interpersonal conflict in the work place. She is markedly obese and may have trouble functioning adequately in a position where she had to move quickly. She is capable of managing her own funds.

(Tr. 182).

Dr. Yong Kim examined plaintiff on July 19, 1994. He found that plaintiff had free motion of her extremities, a normal gait, normal range of motion of the spine, and normal sensory responses. He concluded:

This is a rather difficult problem because of the multiple overriding emotional factors, physical problems, poor understanding of the problem, being noncompliant for her diabetes, etc. However, she certainly is able to perform most of the activities physically.

(Tr. 186).

During the hearing before the Administrative Law Judge (ALJ), a vocational consultant testified that unskilled sedentary employment was available for a person with plaintiff's history of diabetes, memory and concentration problems, and joint discomfort from inflammation or arthritis. The consultant used hardware or small parts assembly as examples of such employment. (Tr. 272).

The ALJ concluded that plaintiff was not disabled from substantial gainful employment, specifically non-complex sedentary labor with a sit/stand option. To support this decision, the ALJ noted several points. He concluded that plaintiff's problems with diabetes and joint discomfort could be mitigated with medication and diet. The ALJ referred to plaintiff's housekeeping activities and to plaintiff's estimation that she could sit or stand for two hours, walk six blocks and occasionally lift 20 pounds. He also noted the conclusions of several doctors who believed plaintiff's use of her extremities was not limited. The ALJ noted that plaintiff did not claim mental problems as grounds for benefits until her application was initially denied. He characterized plaintiff's mental problems as connected to "situational factors." (Tr. 30). The ALJ also relied upon the testimony of the vocational expert. Finally, he stated that plaintiff's work history and reliance on public assistance suggested that "there may be little motivation to work ...." (Tr. 31).

On September 29, 1995, four months after the ALJ decision in this case, plaintiff's treating physician, Dr. Mary L. Tawadros, checked a form indicating that plaintiff suffered from: "Diabetes mellitus with: severe neuropathy resulting in marked difficulty standing, walking or using the hands OR; frequent episodes of ketoacidosis despite treatment." (Tr. 13). This information was submitted to the Appeals Council by plaintiff's attorney. On review, the Appeals Council upheld the decision of the ALJ to deny plaintiff's application for benefits.

■ Our review of this matter is limited to deciding whether the factual findings made to deny plaintiff benefits are supported by substantial evidence and whether the correct legal standards were applied. *Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994). "Substantial evidence" is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

■ Plaintiff's first argument on appeal is that the ALJ mistakenly determined that her impairments and symptoms did not meet the criteria for the listed impairment of obesity under 20 C.F.R. Part 404, Subpart P, Appendix 1, § 9.09 (1996). Under these listings, a female of plaintiff's height who weighs 290 pounds or more is considered disabled if there also exists another impairment (e.g., history of hypertension or heart failure or pain *and* limitation of motion in weight-bearing joints or the spine). We reject this argument. Substantial evidence supports the ALJ's finding that plaintiff's weight was not equal to or greater than 290 pounds. In addition, while there is evidence of pain in weight-bearing joints and the spine, the most persuasive evidence is that there is no substantial limitation of motion. Moreover, there is evidence that plaintiff can perform physical activity consistent with sedentary employment and evidence that plaintiff can mitigate her health problems with diet and medication. In sum, there is substantial evidence that plaintiff had no impairment or combination of impairments which meet or are equal to the obesity listings in the Social Security Administration regulations.

■ Plaintiff's next argument is that the ALJ did not consider plaintiff's deteriorating diabetes and other problems in the aggregate. However, plaintiff's diabetes is mentioned several times in the ALJ's decision. The ALJ also discussed plaintiff's other health problems, including her alleged mental impairments. The ALJ's question to the vocational expert indicates that he considered plaintiff's problems in combination as he was deciding whether she could perform substantial gainful activity. Cf., *Hargis v. Sullivan*, 945 F.2d 1482, 1491, 1492 (10th Cir.1991) (reversal of Secretary's denial of benefits because ALJ did not present difficulties caused by alleged mental impairment to the vocational expert). We find that plaintiff's argument is not supported by the record.

Next, plaintiff argues that the ALJ erred in evaluating plaintiff's credibility. The ALJ determined that plaintiff's testimony was not "generally credible." (Tr. 32).

The Tenth Circuit stated in *Kepler v. Chater*, 68 F.3d 387 (10th Cir.1995):

" 'Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.' *Diaz v. Secretary of Health & Human Services,* 898 F.2d 774, 777 (10th Cir.1990). However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.' *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir.1988) (footnote omitted)."

*Id.* at 391.

"[When considering claims of disabling pain, the ALJ should] 'consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.' *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994)."

*Id.* at 390.

■ Factors which the ALJ should consider in determining whether a claimant's pain is in fact disabling include:

"The levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence."

*Id.* at 391 (quoting *Thompson v. Sullivan,* 987 F.2d 1482, 1489 (10th Cir.1993)).

■ We believe the credibility findings of the ALJ are supported by substantial evidence. Although plaintiff criticizes the ALJ's reference to plaintiff's and plaintiff's husband's receipt of public assistance and food stamps, this is simply a reflection of plaintiff's work record. The motivation of plaintiff may be questioned in light of her work record. See *Ownbey v. Shalala,* 5 F.3d 342, 345 (8th Cir.1993).

Plaintiff complains that the ALJ ignored x-ray evidence consistent with plaintiff's claims of arthritis. However, the ALJ concluded that plaintiff had arthritis. So, he must have given this evidence credence.

■ Plaintiff criticizes the ALJ's characterization of plaintiff's mental impairments as "situational." However, this is the term employed by one consultant who assessed plaintiff's functional capacity on June 13, 1994. (Tr. 141). There is evidence in the record which suggests that some of plaintiff's depression and lack of concentration may be linked to problems in her marriage or in her family which could be resolved. For example, plaintiff testified before the ALJ that she had problems concentrating on the job at least in part because she could not trust her husband. (Tr. 260).

Plaintiff attacks the ALJ for allegedly suggesting that plaintiff's "mental problems" arose only after she had initially been denied benefits. We believe this is not accurate. The ALJ only suggested that plaintiff did not claim mental problems as grounds for benefits after her initial application for benefits was denied. He seemed to admit there was evidence of these problems prior to plaintiff's application for benefits, although he said there was "very little reference to any significant problem until after claimant filed for Supplemental Security Income." (Tr. 30).

■ Finally, plaintiff criticizes the ALJ for contrasting plaintiff's statements to Dr. Thompson with her testimony before the ALJ. In 1993, plaintiff told Dr. Thompson that she could sit or stand for two hours, walk six blocks and occasionally lift 20 pounds. Plaintiff testified before the ALJ that she could walk two blocks, sit for three minutes, stand for an hour and a half, and could not lift, particularly because of grinding pain in her right hip. (Tr. 263). Plaintiff suggests the difference in these statements may be accounted for by the degenerative nature of plaintiff's ailments. But, the evidence does not support plaintiff's admittedly speculative explanation. The evidence has not clearly demonstrated that plaintiff's dia-

betes is a pain-producing ailment. Moreover, the x-ray of plaintiff's right hip taken in 1995 shows a normal right hip. We believe the ALJ properly considered the discrepancy in plaintiff's statements as he judged plaintiff's credibility.

In sum, the court finds that the ALJ appropriately considered both medical and legitimate nonmedical evidence in reaching the conclusion that plaintiff's testimony was not generally credible.

■ Plaintiff's final argument on appeal is that the ALJ relied upon a faulty incomplete hypothetical question to the vocational expert. Plaintiff asserts that the hypothetical question was faulty because it did not mention numbness and shooting pain in plaintiff's arms and legs. An ALJ's hypothetical questions need not, however, include all the limitations to which a claimant has testified. The ALJ may restrict his questions to those limitations he has found to exist based upon substantial evidence in the record. See *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir.1993). A claimed impairment that is found to be not credible or is otherwise not supported by substantial evidence need not be included in a hypothetical. See *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir.1987).

■ Plaintiff supports her attack upon the ALJ's hypothetical question with the September 1995 statement from her treating physician, Dr. Tawadros.[2] This "statement," which is merely a mark on a checklist, does not provide specific support for plaintiff's claim of "shooting pains" or numbness. Nor does it contain specific findings which support a conclusion that plaintiff has marked difficulty standing, walking or using her hands. "A treating physician's opinion may be rejected if his conclusions are not supported by specific findings." *Castellano v. Secretary of HHS*, 26 F.3d 1027, 1029 (10th Cir.1994) (citing 20 C.F.R. 404.1527(d)).

The court believes substantial evidence supports the ALJ's evaluation of plaintiff's complaints of pain and numbness. It is clear that the ALJ gave plaintiff's complaints some credence, but concluded that plaintiff's pain

and numbness were not so severe as to be disabling. The ALJ's determination has support in the record from: the consultative examinations; the progress notes showing that plaintiff's diabetes and pain have been controlled with medication; plaintiff's daily activities; and the inconsistency in plaintiff's statements.

■ We do not believe the "statement" from Dr. Tawadros reasonably could have changed the result reached by the ALJ. Moreover, because plaintiff argues that her condition is degenerating, it is not clear that this evidence is pertinent to the time on or before the date of the ALJ's decision. For these reasons, it is not necessary or appropriate to remand the case for additional consideration of this evidence. See *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir.1995) (standard for remand for new evidence); *Wilkins v. Secretary, Dept. of HHS*, 953 F.2d 93, 96 (4th Cir.1991) (same).

In conclusion, after careful consideration, plaintiff's arguments on appeal are rejected and the decision of the Commissioner to deny plaintiff's application for benefits shall be affirmed.

**IT IS SO ORDERED.**

---

**2.** Of course, the ALJ did not have this statement when he rendered his decision.