Jon R. PIERCE, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. Civ.A. 97–4220–DES.

United States District Court, D. Kansas.

Sept. 15, 1998.

Steven M. Tilton, Topeka, KS, for plaintiff.

D. Brad Bailey, Office of United States Attorney, Topeka, KS, for defendant.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on plaintiff's Motion for Reversal of the Social Security Commissioner's Denial of Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S ,C. §§ 401 *et seq.* (Doc. 9). The court hereby grants the motion and remands the case to the Commissioner for further proceedings.

### I. PROCEDURAL BACKGROUND

Plaintiff filed an initial application for disability benefits under Title II of the Social Security Act on August 18, 1993, which was considered and denied. After filing for reconsideration and being denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On July 19, 1995, a hearing was held before ALJ John J. Rubin. On February 21, 1996, the ALJ rendered a decision unfavorable to plaintiff. Plaintiff requested review of the February 21, 1996, decision by the Appeals Council of the Social Security Administration, which was denied on September 19, 1997. The denial of review by the Appeals Council rendered the ALJ's decision the final decision of the Commissioner. Additional argument was submitted to the Appeals· Council and made part of the record. Plaintiff now seeks an order reversing the Commissioner's decision.

### II. FACTUAL BACKGROUND

Plaintiff was born on December 7, 1944. At the time of his hearing, July 19, 1995, he was 6'2" tall and weighed 223 pounds. Al-

though his weight now fluctuates between 215 and 225 pounds, he weighed as much as 340 pounds in 1978. He has been married eight times and is currently divorced. He has four adult children.

Plaintiff attended college and chiropractic school, but failed to graduate from either. He has no relevant past work experience. He has worked in a barber shop, and in fact owned a barber shop during 1986 and 1987. However, neither of these employment situations lasted for a significant period of time. Plaintiff has also had some work experience as a bartender and worked for "Labor World" for a short period of time.

One of the disabilities alleged by plaintiff is severe fecal incontinence. The other evidence concerning disabilities at the hearing on this matter concerned plaintiff's problems with alcohol. However, the ALJ determined that the alcohol problem was no basis for benefits and plaintiff is not contesting this matter on appeal. Therefore, the following facts all relate to the medical problems and treatments that have occurred in regard to the alleged incontinence.

In 1978, plaintiff was hospitalized in Providence–St. Margaret Health Center ("Providence") for morbid obesity. As treatment for his obesity, plaintiff underwent an intestinal bypass surgery. Approximately ten days after he was discharged from the hospital following surgery, plaintiff was readmitted to Providence as a result of severe hemorrhoids. He complained of loose stools and was diagnosed with irritable bowel syndrome, resulting from his intestinal bypass surgery. Plaintiff was hospitalized for nearly one month due to his irritable bowel syndrome.

Approximately two months after his second discharge from Providence, plaintiff was admitted a third time. The diagnosis this time was anal stricture. He was admitted for a section of his external anal sphincter because of the stricture. Plaintiff was again hospitalized at Providence from July 30, 1979, to August 6, 1979. This hospitalization was for an incisional hernia repair. In November of 1979, plaintiff was hospitalized at Providence for a second anal stricture. He was submitted to dilation of the external anal sphincter as treatment.

In May of 1986, plaintiff was hospitalized at the Indian River Memorial Hospital because of severe abdominal pains. During this hospitalization, plaintiff reported that he was having diarrhea as a result of his surgery and that he had six to seven bowel movements per day. While at Indian River Memorial Hospital, Dr. Silverman, one of the physicians who examined plaintiff, noted that the bypass was still present and resulted in "chronic diarrhea."

From July 30, 1993, to September 24, 1993, plaintiff was hospitalized at the Veterans Administration Medical Center in Leavenworth, Kansas. While at the Veterans Administration Medical Center, plaintiff reported that he had experienced diarrhea since his surgery in 1977 and that it had worsened in the past four to five years. He reported that he was having ten to twelve stools, watery type and in small amounts, each day.

At the hearing in this matter, plaintiff complained of symptoms which were even more severe than those which he had reported to the doctors at the Veterans Administration Medical Center in 1993. These symptoms included: one to three bowel movements per hour, severe abdominal and intestinal cramps unless he eats six to seven times a day, lack of control over his bowel movements, waking up five to six times during the night, inability to climb more than one flight of stairs at a time and difficulty standing or sitting for lengthy periods of time.

### III. STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner"). The reviewing court must determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994). Substantial evidence is adequate relevant evidence that a reasonable mind might accept to support a conclusion. *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991). In contrast, "evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855,

858 (10th Cir.1994) (citation omitted). "A finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir.1992) (citations omitted). The reviewing court must also determine whether the Commissioner applied the correct legal standards. *Washington*, 37 F.3d at 1439. Reversal is appropriate not only for lack of substantial evidence, but also for cases where the Commissioner uses the wrong legal standards. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir.1994).

## IV. ALJ'S DECISION

In his February 21, 1996, decision, the ALJ made the following findings:

1. The claimant met the earnings requirements of the Act on January 1, 1980, the date he stated he became unable work, and continued to meet them through June 30, 1987, but not thereafter.

2. The claimant has not engaged in substantial gainful activity since January 1, 1980.

3. The medical evidence establishes that during the period from January 1, 1980 through June 30, 1987, the claimant had the following impairments which were, in combination, severe: morbid obesity, irritable bowel syndrome, anal stricture, peptic ulcer disease, and alcohol abuse. Nevertheless, he did not have an impairment or combination of impairments listed in, or medically equal to one listed in 20 CFR Part 404, Subpart P, Appendix 1.

4. For the reasons discussed in the Evidence, Evaluation and Rationale section of this decision, the claimant's testimony regarding his subjective complaints during the relevant time is found only partially credible to the extent of the findings contained herein.

5. From January 1, 1980 through June 30, 1987 claimant had the following residual functional capacity: due to the irritable bowel syndrome, anal stricture, and resulting rectal discomfort and leakage, he was unable to lift more than 25 pounds regularly, walk more than one block, or sit or stand more than 15 minutes each without the opportunity to alter his position at will. Claimant also experienced mental limitations due to alcoholism as described in the attached Psychiatric Review Technique form.

6. The claimant has no past relevant work experience.

7. As of June 30, 1987 claimant was 42 years old, which is defined as a younger individual (20 CFR 404.1563), and he has a high school education with five years of college credit (20 CFR 404.1564).

8. The claimant has not acquired work skills which are transferable to the skilled or semi-skilled work functions of other work within his residual functional capacity (20 CFR 404.1568).

9. Pursuant to credible vocational expert testimony, there are occupations claimant can perform which exist in significant numbers in the local and national economies. Examples of such occupations include bench assembler, parking lot attendant, and light hand packager.

10. Based on claimant's residual functional capacity during the relevant time, in addition to his age, education, and work experience, 20 CFR 404.1569, the framework of Medical Vocational Rule 202.20 of 20 CFR Part 404, Subpart P, Appendix 2, Table No. 2, and the testimony of the vocational expert justify a conclusion of "not disabled."

11. The claimant was not under a "disability," as defined in the Social Security Act, as amended, at any time from January 1, 1980 through June 30, 1987 (20 CFR 404.1520(d)).

## V. DISCUSSION

■ To qualify for disability insurance benefits under the Social Security Act, a claimant must establish that he meets the insured status requirements, is under sixty-five years of age, and is under a "disability."

*Flint v. Sullivan,* 951 F.2d 264, 267 (10th Cir.1991).

■ In order to meet the insured status requirements, plaintiff must show that he meets both the fully insured status of 42 U.S.C. § 414(a) and the disability insured status of 42 U.S.C. § 423(c). The ALJ determined that the last date on which plaintiff met the insured status requirements for disability benefits was June 30, 1987. This finding is not contested by plaintiff. Plaintiff has a burden of establishing that he met the requirements for being disabled on or prior to June 30, 1987. *See Flint v. Sullivan,* 743 F.Supp. 777, 783 (D.Kan.1990) (stating that a claimant must prove that he suffered from a disability which existed at or prior to the time he was last insured).

■ As defined in the Act, "disability" is the inability to engage in any substantial gainful activity for at least twelve months due to a medically determinable impairment. 42 U.S.C. § 423(d)(1)(A) (1995). The Act provides:

An individual shall be determined to be under a disability only if his physical impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). *See* 20 C.F.R. § 404.1505(a). The claimant has the burden of establishing disability under the Act. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989). The burden then shifts to the government to show the claimant retains the ability to perform other work which exists in the national economy. *Sorenson v. Bowen,* 888 F.2d 706, 710 (10th Cir.1989).

The Commissioner has established a five-step evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir.1988) (discussing five-step disability test set out in 20 C.F.R. § 404.1520). When reviewing a claim for Social Security benefits, an ALJ must follow the same five-step procedure. *Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir.1992). If the ALJ finds that a person is disabled or not disabled at any point in the process the review ends. *Id.*

At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. *Williams,* 844 F.2d at 750–52. If not, the ALJ continues to step two and considers whether "the claimant has a medically severe impairment or combination of impairments." *Id.* At step three, the ALJ determines whether the impairment is equivalent to one of a number of impairments found in the "Listing of Impairments," 20 C.F.R. Part 404, Subpt. p, App. 1 (1996), which are deemed so severe as to preclude substantial gainful activity. *Id.* If the ALJ finds no equivalency, he then decides whether the impairment prevents the claimant from continuing his past relevant work. *Id.* If so, the ALJ proceeds to the final step and determines whether the claimant has any Residual Functional Capacity ("RFC") to perform other work available in the national economy, considering such additional factors as the claimant's age, education, and past work experience. *Id.*

■ In this case, the ALJ determined at step five of the process that plaintiff had the ability to engage in substantial gainful employment in the national economy. He found, therefore, that plaintiff did not meet the required test for being "disabled" under the Social Security Act and denied plaintiff's request for benefits.

All of plaintiff's claims of error center around the ALJ's findings concerning the incontinence problems. First, plaintiff claims that the ALJ erred by failing to properly consider the effect plaintiff's incontinence has on his ability to work. Second, plaintiff claims that the ALJ erred by failing to make proper credibility findings as to plaintiff. Finally, plaintiff claims that the ALJ erred in finding that plaintiff has the ability to perform work in the national economy.

The ALJ found that plaintiff suffers from complications following the intestinal bypass surgery and that "due to the irritable bowel

syndrome, anal stricture, and *resulting rectal discomfort and leakage,* he was unable to lift more than 25 pounds regularly, walk more than one block, or sit or stand more than 15 minutes each without the opportunity to alter his position at will." Decision of ALJ, Feb. 21, 1996, p. 9 (emphasis added). All of the available evidence supports a finding that plaintiff suffered from fecal incontinence during this period of time. The only questions are the degree to which plaintiff suffered from this problem and whether it was severe enough to render plaintiff "disabled" under the Social Security Act.

The ALJ found that plaintiff's subjective complaints about his health problems during the relevant period were not supported by the evidence presented at the hearing. The ALJ relied heavily on the fact that plaintiff failed to seek medical care for his health problems. As indicated above, plaintiff sought medical attention on two occasions in 1980, neither of which were for treatment of his fecal incontinence. He mentioned chronic diarrhea to a doctor on only one occasion in 1982. He did not seek medical attention at all from 1982 to 1986. In May, 1986, he checked into Indian River Memorial Hospital because of severe abdominal pains and complained of six to seven bowel movements a day.

The Commissioner points out several cases which support the ALJ's consideration of the lack of medical treatment as evidence of the severity of plaintiff's condition. *See Gwathney v. Chater,* 104 F.3d 1043 (8th Cir.1997); *Ostronski v. Chater,* 94 F.3d 413 (8th Cir. 1996); *Huston v. Bowen,* 838 F.2d 1125 (10th Cir.1988); *Wilson v. Chater,* 76 F.3d 238 (8th Cir.1996). The court finds that each of these cases, with the exception of *Huston v. Bowen,* are distinguishable on their facts. In each of these cases, the respective court noted that each plaintiff's problems were treatable. There was no evidence presented at the hearing or in the record which sufficiently shows that plaintiff's health problems could be treated. If, there was no treatment which could alleviate plaintiff's problems, as he claims, it would be improper for the ALJ to rely on the fact that he had not sought medical treatment during the relative period when determining plaintiff's credibility and the severity of plaintiff's condition.

As stated above, the ALJ found that plaintiff suffered from some degree of fecal incontinence. The only available evidence as to the severity of this incontinence is the medical records from Indian River Memorial Hospital in 1986. At that time, the plaintiff complained of six to seven bowel movements a day. There is no evidence in the record which would contradict the statements made to the doctors at Indian River Memorial Hospital or to suggest that these statements were false or exaggerated. The ALJ, however, apparently disregarded this evidence as incredible. The court finds that this was in error. Credibility findings should be closely linked to the substantial evidence of record and not "just a conclusion in the guise of findings." *St. Clair v. Chater,* 963 F.Supp. 984, 989 (D.Kan.1997). The only evidence before the ALJ was that plaintiff suffered from six to seven bowel movements a day. When no contrary medical evidence exists, a finding of no substantial evidence can be made. *See Trimiar,* 966 F.2d at 1329.

In order to determine whether claimants are employable in the national and local communities, ALJs use the help of vocational experts through hypothetical questions. At the hearing in this case, the ALJ asked the vocational expert if a person were forced to leave work ten times a day to use the restroom for up to ten minutes at a time, whether that person be employable. The vocational expert testified that in that situation the person would not be employable. However, the ALJ did not ask the vocational expert whether a person who has between six and seven bowel movements a day would be employable. As all of the available evidence shows that plaintiff had these symptoms, the court finds it error that the ALJ did not ascertain whether a person in this situation would be employable.

## VI. CONCLUSION

The court finds that the evidence in this case, coupled with the factual findings of the ALJ, clearly shows that plaintiff suffered from fecal incontinence at the time relative to his application for disability benefits under the Social Security Act. The evidence further shows that, in addition to the limitations

found by the ALJ, this condition resulted in six to seven bowel movements a day which may have impacted his ability to work in 1987. However, the question of whether plaintiff was disabled as a result of this problem was not answered by the ALJ.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff's Motion for Reversal (Doc. 9) is granted and that this case is reversed and remanded to the Commissioner for further factual findings and proceedings in accordance with this opinion.