Holley BINDLEY, Plaintiff,

v.

John J. CALLAHAN, Ph.D.,[1] Acting Commissioner of Social Security, Defendant.

Civil Action No. 96–4125–DES.

United States District Court,
D. Kansas.

March 28, 1997.

---

[1] President Clinton appointed John J. Callahan, Ph.D., to serve as Acting Commissioner of Social Security, effective March 1, 1997, to succeed Shirley S. Chater. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, John J. Callahan, Ph.D., should be substituted for Shirley S. Chater as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). [Editor's Note: Caption amended nunc pro tunc by order of April 17, 1997.]

Lynette F. Petty, Topeka, KS, for Plaintiff.

D. Brad Bailey, Office of U.S. Attorney, Topeka, KS, for Defendant.

**2.** Ms. Bindley's alleged onset date in her application for benefits was June 15, 1993. Her alleged onset date in her Disability Report was Septem-

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

This matter is before the court on plaintiff's motion seeking reversal or remand of the Social Security Commissioner's denial of disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (Doc. 11).

### I. PROCEDURAL BACKGROUND

On October 25, 1993, Ms. Bindley filed an application for Social Security Disability Insurance and Supplemental Security Income. Ms. Bindley alleged she became unable to work because of her disabling condition on June 15, 1993. The Social Security Administration ("SSA") denied Ms. Bindley's claim on November 22, 1993, stating that her condition would not limit her ability to work for the requisite period of twelve consecutive months. Ms. Bindley filed a request for reconsideration on January 26, 1994. SSA denied Ms. Bindley's request on March 14, 1996, also finding that her condition was not severe enough to last for twelve continuous months.

On March 30, 1994, Ms. Bindley requested a hearing by an administrative law judge ("ALJ"). Ms. Bindley's hearing was held on June 6, 1995. In a decision dated July 20, 1995, the ALJ determined that Ms. Bindley was not entitled to a period of disability or disability insurance benefits, because she had not been "disabled" within the meaning of the Social Security Act. Ms. Bindley's request for review of the ALJ's decision was denied on October 5, 1994. The ALJ's decision thus stands as the final decision of the Social Security Commissioner ("Commissioner") from which Ms. Bindley now appeals.

### II. FACTUAL BACKGROUND

Ms. Bindley first applied for disability insurance benefits on October 25, 1993. She alleged that she had been unable to work since June 15, 1993, due to seizures.[2] Ms. Bindley had a high school education, as well

ber 14, 1993; she indicated that she was working until September 1993.

as computer data entry training, and was nineteen years old on her alleged onset date.

Ms. Bindley had a history of chronic otitis media in her left ear and underwent a left ear canal reconstruction in April 1990. She testified that she had lost "high-pitch" hearing in her left ear, but acknowledged she did not wear a hearing aid and she did not have difficulty listening to the ALJ at the hearing. She also had a history of asthma, but testified it was controlled with an inhaler.

Treating neurologist Joseph M. Stein, M.D., initially evaluated Ms. Bindley on August 10, 1993. Ms. Bindley reported loss of consciousness on one occasion several weeks earlier, and recurring headaches for the last several years. Dr. Stein's impression was she had a single grand mal convulsive episode. Dr. Stein advised her not to drive, but she could continue to do normal activities and could continue to work. Two weeks later, Dr. Stein reported that EEG and MRI studies of Ms. Bindley's head and brain were essentially normal. Furthermore, although Dr. Stein noted that Ms. Bindley had been free of seizures, he prescribed Depakote, and anticonvulsant, for seizure prevention and as a treatment for her tension headaches.

Ms. Bindley was hospitalized in November 1993 and again in May 1994 for depression and mixed substance abuse. On both occasions, she responded to treatment with antidepressants. She was advised to attend Alcoholics Anonymous, but she indicated she would probably not follow through with this recommendation. Her treating psychotherapist also noted that she had been noncompliant with agreed-upon weekly meetings.

According to a note by Dr. Stein, Ms. Bindley failed to take her anticonvulsant medication. Nevertheless, Ms. Bindley subsequently reported to Dr. Stein that she had not had any seizures since November 1993. She also reported that she had only an occasional mild headache. Ms. Bindley further acknowledged to Dr. Stein that she had been abusing drugs and alcohol on a daily basis during the time of her seizure activity, but that she had not taken any drugs or medication since learning, in late February or early March, that she was pregnant.

During a brief mental status examination by George Hugh, Ph.D., in May 1995, Ms. Bindley reported she had outgrown her asthma and seizure disorder and that her only medications were prenatal vitamins. Dr. Hugh diagnosed Ms. Bindley with alcohol abuse and borderline personality disorder.

Ms. Bindley testified that a chiropractor was treating her for pain in her neck and back, and that she had mild migraine headaches almost every day. These headaches, Ms. Bindley testified, required her to lie in a dark room and relax. She stated that she no longer took any prescription medications and that she had quit abusing drugs and alcohol due to her pregnancy. She also stated she visited with her family at least twice weekly. She further stated she was able to take care of her personal needs and do routine household chores and she could perform a job that involved simple tasks without frequent contact with the public, if she was not criticized for her work.

The ALJ heard testimony from Ms. Bindley's mother who testified that Ms. Bindley's behavior went downhill in 1993, but that it appeared to improve after she became pregnant. Ms. Bindley's mother also testified that Ms. Bindley seemed more confused since she stopped taking drugs, that she loses control, and that she is unable to focus on the subject of a conversation.

The ALJ also heard testimony from Ms. Janice Hastert, a vocational expert. A hypothetical question posed to Ms. Hastert depicted an individual of Ms. Bindley's age, education, and work experience, and with a residual functional capacity for a range of light and sedentary work. Based on this hypothetical question, Ms. Hastert testified that such an individual could perform unskilled work as a photocopy operator, hand packager, optical goods assembler, and microfilm operator.

### III. STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of a final decision of the Commissioner of the SSA. The reviewing court must determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. 42 U.S.C.

§ 405(g); *Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir.1994). Substantial evidence is adequate relevant evidence that a reasonable mind might accept to support a conclusion. *Hargis v. Sullivan,* 945 F.2d 1482, 1486 (10th Cir.1991). "Evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir.1994) (citation omitted). "A finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir.1992) (citations omitted). The reviewing court must also determine whether the Commissioner applied the correct legal standards. *Washington,* 37 F.3d at 1439. Reversal is appropriate not only for lack of substantial evidence, but also for cases where the Commissioner uses the wrong legal standards. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994).

## IV. DISCUSSION

■ To qualify for disability insurance benefits under the Social Security Act ("Act"), a claimant must establish that she meets the insured status requirements, is under sixty-five years of age, and is under a "disability." *Flint v. Sullivan,* 951 F.2d 264, 267 (10th Cir.1991). As defined in the Act, "disability" is the inability to engage in any substantial gainful activity for at least twelve months due to a medically determinable impairment. 42 U.S.C.A. § 423(d)(1)(A) (1995). The Act provides:

> An individual shall be determined to be under a disability only if his physical impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C.A. § 423(d)(2)(A) The claimant has the burden of establishing disability under the Act. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989). The burden then shifts to the government to show the claimant retains the ability to perform other work which exists in the national economy. *Sorenson v. Bowen,* 888 F.2d 706, 710 (10th Cir.1989).

The Commissioner has established a five-step evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir.1988)(discussing five-step disability test). When reviewing a claim for disability benefits, an ALJ must follow the same five-step procedure. *Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir.1992). If the ALJ finds at any point in the process that a person is disabled or not disabled, the review ends. *Id.* At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. *Williams,* 844 F.2d at 750–52. If not, the ALJ continues to step two, and considers whether "the claimant has a medically severe impairment or combination of impairments." *Id.* At step three, the ALJ determines whether the impairment is equivalent to one of a number of impairments found in the "Listing of Impairments," 20 C.F.R. Part 404, Subpt. p, App. 1, which are deemed so severe as to preclude substantial gainful activity. *Id.* If the ALJ finds no equivalency, she then decides whether the impairment prevents the claimant from continuing his past relevant work. *Id.* If so, the ALJ proceeds to the final step and determines whether the claimant has any Residual Functional Capacity ("RFC") to perform other work available in the national economy, considering such additional factors as the claimant's age, education, and past work experience. *Id.*

In applying this analysis to Ms. Bindley's case, the ALJ found at step three that Ms. Bindley did not have an impairment or combination of impairments meeting or equaling the level of severity of any impairment described in the "Listing of Impairments." However, proceeding to step four, the ALJ noted that Ms. Bindley's impairments prevented her from returning to her past relevant work. The ALJ also noted the burden then shifted to the Commissioner at the final

stage of the five-step sequential analysis to show there were jobs available that Ms. Bindley could perform which exist in significant numbers in the regional or national economy. At step five, the ALJ concluded, based on the vocational expert's testimony, that a significant number of jobs still existed in the national economy which Ms. Bindley would be capable of performing. The ALJ identified the occupations of photocopy operator, hand packager, optical goods assembler, and microfilm operator, which she found existed in significant numbers in both the relevant regional and national economies. She therefore concluded that Ms. Bindley was not disabled and not entitled to disability benefits.

■■■ Ms. Bindley argues the ALJ failed to apply the correct legal standards in evaluating Ms. Bindley's alleged mental impairment. For the first part of her argument, Ms. Bindley contends the ALJ erred in using the medical-vocational guidelines, 20 C.F.R. § 404, Subpt. P, App. 2 ("grids") to conclude she was not disabled. The ALJ's reliance on the grids was erroneous, Ms. Bindley contends, due to the presence of her non-exsertional limitations. The grids, which were developed to aid in the determination of social security disability claims, account for a claimant's residual functional capacity, age, education and work experience and lead to a result of disabled or not disabled. *See* 20 C.F.R. § 404, Subpt. P, App. 2 (1994). Resort to the grids is only appropriate, however, when these characteristics exactly fit a listing in the grids. *Gossett v. Bowen,* 862 F.2d 802, 806 (10th Cir.1988). Where significant non-exsertional impairments exist, such as mental impairments, the ALJ should not apply the grids conclusively. *Id.* Instead, "[the grids may serve only as a framework to determine whether sufficient jobs remain within a claimant's range of residual functional capacity.]" *Hargis v. Sullivan,* 945 F.2d 1482, 1490 (10th Cir.1991) (citing *Huston v. Bowen,* 838 F.2d 1125 (10th Cir. 1988)).

The court is not persuaded by Ms. Bindley's argument that the ALJ improperly applied the medical-vocational grids to her case. The ALJ did not conclusively rely on the grids in finding that Ms. Bindley was not disabled, but rather used the grids simply as a framework for her decision making. Once the ALJ concluded that Ms. Bindley's impairments prevented her from returning to her past relevant work, the ALJ correctly shifted the burden to the Commissioner to show there were jobs available that Ms. Bindley could perform. To meet this burden, the ALJ properly relied on testimony from a vocational expert, Ms. Hastert, who testified to a number of jobs available to a person with the impairments and characteristics the ALJ listed in her hypothetical question.

■■■ Ms. Bindley next argues the ALJ did not follow the proper procedures for evaluating the effects of her mental disability. Where a claimant presents evidence that a mental impairment prevents her from working, "the [Commissioner] must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and the Listing of Impairments and document the procedure accordingly." *Cruse v. Dept. of Health & Human Servs.,* 49 F.3d 614, 617 (10th Cir.1995) (citing *Andrade v. Secretary of Health & Human Servs.,* 985 F.2d 1045, 1048 (10th Cir.1993)). This procedure requires the Commissioner to first determine the presence or absence of "certain medical findings which have been found especially relevant to the ability to work," sometimes referred to as the "Part A" criteria. 20 C.F.R. 404.1520a(b)(2); *Cruse,* 49 F.3d at 617. The Commissioner must then evaluate the degree of functional loss resulting from the impairment, using the "Part B" criteria. 20 C.F.R. § 404.1520a(b)(3); *Cruse,* 49 F.3d at 617. The Commissioner is then required to record her conclusions by preparing a document called a Psychiatric Review Technique Form ("PRT form") that tracks the listing requirements and evaluates the claimant under the Part A and B criteria. 20 C.F.R. § 404.1520a(d); *Cruse,* 49 F.3d at 617. At the ALJ hearing level, the regulations allow the ALJ to complete the PRT form with or without the assistance of a medical advisor and require the ALJ to attach the form to his or her written decision. *Id.*

In this case, the ALJ completed the PRT form herself without assistance from a med-

ical advisor. Under Part A, she found evidence of an affective disorder and marked the diagnosis for depressive syndrome. The ALJ noted that Ms. Bindley's depression was characterized by sleep disturbance, decreased energy, feelings of guilt or worthlessness, thoughts of suicide, and hallucinations, delusions, or paranoid thinking. However, the ALJ also noted that Ms. Bindley's depression had been "in remission since cessation of substance abuse." The ALJ further noted under Part A evidence of a borderline personality disorder and a substance abuse disorder which she found to be in complete remission since February of 1995.

To meet the listing requirements under the Part B criteria regarding the severity of the impairment, the condition or impairment must result in at least two of the following: 1) marked restriction of activities of daily living; or 2) marked difficulties in maintaining social functioning; or 3) frequent deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or 4) repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation (decompensation) or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors). 20 C.F.R. § 404.1520a(b)(3); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 B; *Cruse,* 49 F.3d at 617. The ALJ concluded that Ms. Bindley had only "moderate" restrictions on her activities of daily living and "slight" difficulties in maintaining social functioning, "seldom" had deficiencies of concentration, persistence or pace, and "never" had episodes of deterioration or decompensation in work or work-like settings.

■ The record must contain substantial competent evidence to support the conclusions recorded on the PRT form. *Cruse,* 49 F.3d at 617 (citing *Washington,* 37 F.3d at 1442). Moreover, if the ALJ prepares the form herself, she must "discuss in [her] opinion the evidence [s]he considered in reaching the conclusions expressed on the form." *Id.* Ms. Bindley contends the ALJ's conclusions,

in Part A of the PRT form, are not supported by substantial evidence. She also contends the ALJ failed to discuss the evidence she considered in reaching her conclusions in Part B of the PRT form. The court disagrees.

It appears from the record that the ALJ relied heavily on the report of Dr. Hough, a psychologist, in making her determination. While it is true that this report reflects Dr. Hough's findings after one visit with Ms. Bindley, the court nevertheless agrees with the ALJ that the report is the most persuasive evidence of Ms. Bindley's functional capacity. Contrary to Ms. Bindley's assertion, there is nothing tentative about Dr. Hough's diagnosis. Although Dr. Hough stated in his report that it was difficult to get accurate and reliable information from Ms. Bindley, he in no way indicated this difficulty would affect his diagnosis. Nor did he otherwise qualify his diagnosis. The ALJ's reliance on Dr. Hough's evaluation is also justified because it was the most recent evaluation available at the time of the hearing. It was also the only evaluation performed after Ms. Bindley became drug and alcohol free. Finally, it is clear from the record that although the ALJ found Dr. Hough's report to be the most persuasive evidence of Ms. Bindley's functional capacity, the ALJ also considered other available evidence and based her decision on the record as a whole. The court finds the ALJ's conclusions are supported by substantial evidence and the ALJ sufficiently discussed the evidence she considered in reaching the conclusions expressed on PRT form.

■ Ms. Bindley also contends the ALJ erred by limiting her findings under Part B of the PRT to February 1995 and later, or the period "since remission of drug abuse." It appears from the record that the ALJ's reasons for so limiting her findings were two-fold. First, as the ALJ emphasized, the record contained evidence that Ms. Bindley's depression and seizure disorder were directly related to her history of drug and alcohol abuse. It was significant, therefore, that Ms. Bindley alleviated these problems when she quit using drugs and alcohol after she became pregnant. Furthermore,

where, as here, a claimant demonstrates that she has the ability to control her substance abuse, the condition is not considered disabling under the Act. *See Coleman v. Chater,* 58 F.3d 577, 579 (10th Cir.1995) (citations omitted).

 The second reason for the date restriction on the ALJ's findings appears to be related to Ms. Bindley's work activity. Ms. Bindley testified at the hearing that she worked at the Liberty Inn from August 1994 to January 1995. The ALJ found this fact to be inconsistent with Ms. Bindley's alleged onset date of disability. The ALJ also noted that it demonstrated that Ms. Bindley "certainly was capable of work activity subsequent to the date she alleges she became totally disabled." Ms. Bindley suggests she was entitled to a trial work period, as set forth in 20 C.F.R. § 404.1592, to test her ability to work, and therefore her employment with Liberty Inn is not inconsistent with her alleged onset date. The trial work period, however, is not applicable to Ms. Bindley because she was not, at the time of her employment, receiving disability insurance benefits. *See* 20 C.F.R. § 404.1592(d)(1) and (e). The court finds the ALJ did not err by limiting her findings under Part B of the PRT to February 1995 and later, and that sufficient evidence supports the AJ's decision to do so.

 Ms. Bindley further contends the ALJ erred by relying on the vocational expert's response to a hypothetical inquiry which failed to include all the impairments suggested by the evidentiary record. The court disagrees. The hypothetical which elicited the response upon which the ALJ based her decision included those impairments which the ALJ found to be properly supported by the record as a whole. This finding may be overturned only if it is overwhelmingly contradicted by other evidence, which is not the case here.

 As a final argument, Ms. Bindley challenges the sufficiency of the evidence supporting the ALJ's finding the testimony of Ms. Bindley and her mother "to be no more than partially credible." The ALJ's credibility findings are traditionally given particular deference. *Williams v. Bowen,* 844 F.2d 748, 755 (10th Cir.1988) (citing *Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383, 387 (6th Cir.1978)). However, the ALJ must sufficiently support such findings with substantial evidence. *Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir.1988). Ms. Bindley contends the record does not sufficiently demonstrate substantial evidence supporting the ALJ's credibility conclusion. Any doubt concerning the sufficiency of the evidence supporting the ALJ's credibility finding, however, even if justified, is not enough to disturb the ALJ's decision which, in light of the record as a whole, the court finds to be properly supported by substantial evidence.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff's motion seeking reversal or remand of the Commissioner's denial of disability insurance benefits under Title II of the Social Security Act (Doc. 11) is denied.