Lawrence R. UMSCHEID, Plaintiff,

v.

Kenneth S. APFEL,[1] Commissioner of Social Security, Defendant.

Civil Action No. 97–4019–DES.

United States District Court, D. Kansas.

Jan. 6, 1998.

---

1. Kenneth S. Apfel was sworn in as Commissioner of Social Security on September 29, 1997. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted for John J. Callahan as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1344

Kenneth M. Carpenter, Carpenter Chartered, Topeka, KS, Kelly C. Brown, Topeka, KS, for Plaintiff.

Nancy M. Landis, Office of U.S. Atty., Topeka, KS, for Defendant.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on plaintiff's motion for reversal of the Social Security Commissioner's denial of disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (Doc. 11).

### I. PROCEDURAL BACKGROUND

The Social Security Administration denied plaintiff's application for disability benefits both initially and upon reconsideration. Following an administrative hearing on February 1, 1995, and a supplemental administrative hearing on August 23, 1995, an administrative law judge ("ALJ") concluded that plaintiff is not entitled to disability benefits under Title II because he had not been

"disabled" within the meaning of the Social Security Act ("Act") at any time when he met the earnings requirement in the Act.[2] The ALJ found plaintiff was not disabled because he retained the ability to perform light work which existed in significant numbers in the local and national economies. On November 29, 1996, the Appeals Council denied plaintiff's request for review. The ALJ's decision thus stands as the final decision of the Social Security Commissioner. *See* 20 C.F.R. § 404.981 (1996).

## II. FACTUAL BACKGROUND

Plaintiff Lawrence R. Umscheid was born on November 28, 1954. He has a high school education and is a registered radiologic technician. Plaintiff alleges that he became unable to work as of December 11, 1992, due to a bipolar disorder and bowel incontinence.

On December 11, 1992, plaintiff admitted himself to the Topeka, Kansas, Veteran's Administration Medical Center ("VAMC") due to complaints of decreased sleep, anxiety, and depression. Plaintiff also had complaints of rectal incontinence throughout his stay at the medical center. During plaintiff's treatment at the VAMC, George Penn, M.D., indicated in a letter dated February 2, 1993, that plaintiff was unable to be gainfully employed and that he was transferring plaintiff to the domiciliary at Knoxville, Iowa, for an indefinite time. Upon discharge from the VAMC on February 9, 1993, plaintiff was in stable condition, on a regular diet, and was considered to be improved with an intention of staying at the Knoxville, Iowa, domiciliary.

Plaintiff was admitted to the domiciliary on February 9, 1993, for treatment in the Community Reentry program. His treatment centered around classes on nutrition, medication, fiscal management, leisure education, discharge planning, relapse prevention, and other self-supportive classes. On September 13, 1993, plaintiff was transferred to the domiciliary in Leavenworth, Kansas, for vocational rehabilitation. Upon admission, he had no medical complaints and only indicated that he needed a "uro" consultation. Shortly after admission, however, he complained of arthritis in his neck and back, and was re-ferred to physical therapy and put on Feldene with favorable results. While at the domiciliary, plaintiff engaged in leisure activities, including wood crafts, and expressed a desire to attend college in the fall of 1995. He intended to stay in the domiciliary until his educational arrangements were made. On October 12, 1994, the Department of Veterans Affairs concluded that plaintiff was entitled to a non-service connected disability pension based on his bipolar disorder. He was discharged from the domiciliary on December 12, 1994, with medications.

At the initial hearing on February 1, 1995, Sanford Pomerantz, M.D., testified as a medical expert. Dr. Pomerantz stated that plaintiff's bipolar disorder restricted his activities of daily living and social functioning only slightly, and rarely caused deficiencies of concentration, persistence or pace. He also testified that he had a number of patients with bipolar disorder who, when properly medicated, functioned quite successfully in society.

Another medical expert, psychiatrist Syed Shabbir, M.D., testified at the second hearing on August 23, 1995. Dr. Shabbir opined that plaintiff's mental condition had been asymptomatic for the last three years. He felt plaintiff's proper diagnosis was depressive syndrome in addition to substance abuse disorder. In his opinion, restrictions on plaintiff's activities of daily living and social functioning were slight; deficiencies of concentration, persistence or pace were seldom; and episodes of deterioration or decompensation in work or work-like settings never occurred. He also pointed out that plaintiff's fecal incontinence was not consistently mentioned in the evidence of record.

Plaintiff testified at the February 1, 1995, administrative hearing and a vocational expert testified at the August 23, 1995, administrative hearing. Plaintiff testified that he quit working after taking a leave of absence after his admission to the Topeka VAMC due to depression and anxiety difficulties. He noted that he had additional problems of bowel incontinence and a history of alcohol

---

2. For insured status under the Act, an individual is required to have 20 quarters of coverage in the 40–quarter period ending with the first quarter of disability. This is the so-called "earnings requirement." 42 U.S.C. § 416(i)(3)(B) and § 423(c)(1)(B).

and substance abuse. Plaintiff testified that he was domiciled at the Leavenworth VAMC from September 1993 through December 1994 for treatment, but that he was free to come and go as he pleased. Plaintiff testified that his activities consisted of fixing breakfast, reading, doing some light housekeeping, and caring for his dog. Based on a hypothetical question posed by the ALJ, a vocational expert testified that plaintiff could perform jobs such as an electronics tool repairer, electronic motor repairer, bench assembler, and photocopy machine operator.

## III. STANDARD OF REVIEW

42 U.S.C. § 405(g) provides for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner"). The reviewing court must determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. *Washington v. Shalala,* 37 F.3d 1437, 1439 (10th Cir.1994). Substantial evidence is adequate relevant evidence that a reasonable mind might accept to support a conclusion. *Hargis v. Sullivan,* 945 F.2d 1482, 1486 (10th Cir. 1991). In contrast, "evidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala,* 44 F.3d 855, 858 (10th Cir.1994) (citation omitted). "A finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir.1992) (citations omitted). The reviewing court must also determine whether the Commissioner applied the correct legal standards. *Washington,* 37 F.3d at 1439. Reversal is appropriate not only for lack of substantial evidence, but also for cases where the Commissioner uses the wrong legal standards. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994).

## IV. DISCUSSION

To qualify for disability insurance benefits under the Social Security Act, a claimant must establish that he meets the insured status requirements, is under sixty-five years of age, and is under a "disability." *Flint v. Sullivan,* 951 F.2d 264, 267 (10th Cir.1991). As defined in the Act, "disability" is the inability to engage in any substantial

gainful activity for at least twelve months due to a medically determinable impairment. 42 U.S.C.A. § 423(d)(1)(A) (1995). The Act provides:

> An individual shall be determined to be under a disability only if his physical impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C.A. § 423(d)(2)(A) *See* 20 C.F.R. § 404.1505(a). The claimant has the burden of establishing disability under the Act. *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989). The burden then shifts to the government to show the claimant retains the ability to perform other work which exists in the national economy. *Sorenson v. Bowen,* 888 F.2d 706, 710 (10th Cir.1989).

The Commissioner has established a five-step evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. *See Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir.1988) (discussing five-step disability test set out in 20 C.F.R. § 404.1520). When reviewing a claim for Social Security benefits, an ALJ must follow the same five-step procedure. *Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir.1992). If the ALJ finds at any point in the process that a person is disabled or not disabled, the review ends. *Id.*

At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. *Williams,* 844 F.2d at 750–52. If not, the ALJ continues to step two and considers whether "the claimant has a medically severe impairment or combination of impairments." *Id.* At step three, the ALJ determines whether the impairment is equivalent to one of a number of impairments found in the "Listing of Impairments," 20 C.F.R. Part 404, Subpt. P, App. 1 (1996), which are deemed so severe as to preclude

substantial gainful activity. *Id.* If the ALJ finds no equivalency, he then decides whether the impairment prevents the claimant from continuing his past relevant work. *Id.* If so, the ALJ proceeds to the final step and determines whether the claimant has any Residual Functional Capacity ("RFC") to perform other work available in the national economy, considering such additional factors as the claimant's age, education, and past work experience. *Id.*

In applying this analysis to plaintiff's case, the ALJ found at step three that plaintiff did not have an impairment or combination of impairments meeting or equaling the level of severity of any impairment described in the "Listing of Impairments." However, proceeding to step four, the ALJ noted that plaintiff's impairments prevented him from returning to his past relevant work. The ALJ also noted the burden then shifted to the Commissioner at the final stage of the five-step sequential analysis to show there were jobs available that plaintiff could perform which exist in significant numbers in the regional or national economy. At step five, the ALJ found, based on the vocational expert's testimony, that a significant number of jobs existed in the national economy which plaintiff would be capable of performing. The ALJ identified the occupations of electronics tool repairer, electric motor repairer, bench assembler, and photocopy machine operator, which he found existed in significant numbers in the relevant regional economy. He therefore concluded that plaintiff was not disabled and not entitled to disability benefits.

◼ Plaintiff argues that the ALJ's determination is not supported by substantial evidence from the record as a whole. According to plaintiff, the evidence shows he was unemployable due to Bipolar Affective Disorder from December 11, 1992, through December 12, 1994, and due to fecal incontinence from December 12, 1994, to the present. The court first will examine the evidence in support of the ALJ's decision with regard to plaintiff's claimed psychiatric impairment.

Where a claimant presents evidence that a mental impairment prevents him from working, "the [Commissioner] must follow the procedure for evaluating mental impairments set forth in 20 C.F.R. § 404.1520a and the Listing of Impairments and document the procedure accordingly." *Cruse v. U.S. Dept. of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir.1995) (citing *Andrade v. Secretary of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir.1993)). This procedure requires the Commissioner to first determine the presence or absence of "certain medical findings which have been found especially relevant to the ability to work," sometimes referred to as the "Part A" criteria. 20 C.F.R. § 404.1520a(b)(2); *Cruse*, 49 F.3d at 617. The Commissioner must then evaluate the degree of functional loss resulting from the impairment, using the "Part B" criteria. 20 C.F.R. § 404.1520a(b)(3); *Cruse*, 49 F.3d at 617. The Commissioner is then required to record his conclusions by preparing a document called a Psychiatric Review Technique Form ("PRT form") that tracks the listing requirements and evaluates the claimant under the Part A and B criteria. 20 C.F.R. § 404.1520a(d); *Cruse*, 49 F.3d at 617. At the ALJ hearing level, the regulations allow the ALJ to complete the PRT form with or without the assistance of a medical advisor and require the ALJ to attach the form to his or her written decision. *Id.*

In this case, the ALJ completed the PRT form with the assistance of Dr. Pomerantz at the initial hearing and Dr. Shabbir at the supplemental hearing. Under Part A, the ALJ found evidence of an affective disorder and marked the diagnosis for bipolar syndrome. The ALJ further noted under Part A evidence of a substance abuse disorder which he found to be in complete remission.

To meet the listing requirements under the Part B criteria regarding the severity of the impairment, the condition or impairment must result in at least two of the following: 1) marked restriction of activities of daily living; or 2) marked difficulties in maintaining social functioning; or 3) frequent deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or 4) repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience

exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors). 20 C.F.R. § 404.1520a(b)(3); 20 C.F.R.Pt. 404, Subpt. P, App. 1, § 12.04 B; *Cruse,* 49 F.3d at 617. The ALJ concluded that plaintiff had only "slight" restrictions on his activities of daily living and "slight" difficulties in maintaining social functioning, "seldom" had deficiencies of concentration, persistence or pace, and "never" had episodes of deterioration or decompensation in work or work-like settings.

■ It is clear from the record that the ALJ relied heavily on the testimony of Drs. Pomerantz and Shabbir, both board certified psychiatrists, in making his determination. Plaintiff objects to the ALJ's reliance on these independent medical advisors and refers the court to the opinions of his treating physicians, which, plaintiff contends, support his argument that he was disabled due to bipolar affective disorder from December 11, 1992, through December 12, 1994. The Tenth Circuit has addressed the regulations regarding the weight the Commissioner will give to opinions proffered by a treating physician.

> A treating physician may offer an opinion which reflects a judgment about the nature and severity of the claimant's impairments including the claimant's symptoms, diagnosis and prognosis, and any physical or mental restrictions. The Secretary will give controlling weight to that type of opinion if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. A treating physician may also proffer an opinion that a claimant is totally disabled. That opinion is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the Secretary.

*Castellano v. Secretary of Health and Human Services,* 26 F.3d 1027, 1028 (10th Cir. 1994) (citations omitted). Thus, while a treating physician's opinion is generally afforded considerable deference, it may be rejected if it is not supported by specific findings. *See* 20 C.F.R. § 404.1527(d).

Here, the ALJ discounted or rejected the opinions of plaintiff's treating physicians because "they were not supported by substantial medical evidence." For example, although Dr. Penn indicated plaintiff was unemployable in February 1993, the ALJ noted that Dr. Penn failed to provide any medical reasoning or evidence supporting his conclusion. The ALJ noted similar deficiencies for Dr. Kinder's conclusions regarding plaintiff's employability. Although Dr. Kinder admitted responding in the negative to a question concerning plaintiff's ability to return to work, she expressly stated that she so responded merely to be consistent with the Veteran Administration's disability determination. Her report clearly reveals her intention to protect plaintiff's VA benefits. As the ALJ points out, Dr. Kinder specifically recognized that "the VA does not require as stringent documentation of disability as Social Security."

At the August 23, 1995, hearing, the ALJ asked Dr. Shabbir whether the reports by Drs. Penn and Kinder evidenced findings to properly support their conclusions. Dr. Shabbir testified that they did not. He stated that they were very brief statements and he could not find substantial medical support for the conclusion that plaintiff was unemployable due to mental impairment. Dr. Shabbir also testified that bipolar disorder, when controlled by medication, should not impose any limitations on plaintiff's functioning.

The ALJ also noted that a neurospsychological evaluation conducted in July 1993 by David F. Dettman, Ph.D., showed that almost all areas of plaintiff's functioning were intact with abilities ranging from average to very superior. The evaluation also revealed a very mild deficit in sustained concentration and attention, but Dr. Dettman indicated that as plaintiff's bipolar disorder was stabilized, improvement in concentration could be expected. Dr. Dettman further indicated that plaintiff's "intellectual and memory abilities are at a level found in postgraduate training," and that plaintiff had "considerable potential then for educational pursuits." These findings accord with those of plaintiff's Discharge Summary, in which J.E. Cox, Jr., D.O., concluded that plaintiff was "considered employable and competent to handle VA allocated funds."

The ALJ also considered other evidence which he found inconsistent with plaintiff's

claim that he was unemployable due to Bipolar Affective Disorder from December 11, 1992, through December 12, 1994. For example, the ALJ noted that during plaintiff's treatment at the VAMC from December 11, 1992, through February 9, 1993, he was cooperative in his treatment, active in pursuing activities, and "coping quite well" with his anxiety and depression. The ALJ also noted that, contrary to plaintiff's testimony that his stay at the domiciliary was for purposes of treatment, the records from that facility indicate that plaintiff was actually admitted because of his homelessness. Likewise, the ALJ found plaintiff's testimony that he was unable to work due to his inability to deal with people contradicted by the domiciliary clinic notes which show that plaintiff maintained a high degree of motivation, socialized well with both staff and peers, and actively participated in group sessions.

■ The court finds that the record as a whole contains substantial evidence to support the ALJ's finding regarding plaintiff's allegations of mental impairment. Consequently, the ALJ's determination that plaintiff was not disabled due to mental impairment will be affirmed. The court next examines the evidence in support of the ALJ's decision to reject plaintiff's claim that he was unemployable due to fecal incontinence from December 12, 1994, to the present.

■ Plaintiff refers the court to the March 16, 1995, progress note in which his treating physician, Dr. Nanda, concluded that plaintiff's fecal incontinence renders him unemployable. As discussed above, the court should give controlling weight to a treating physician's opinion if it is well supported by medical evidence and if it is not inconsistent with other substantial evidence in the record. The government contends that this opinion was properly rejected by the ALJ as inconsistent with other substantial evidence in the record. Although Dr. Nanda concluded that plaintiff's fecal incontinence rendered him unemployable, the government points out that the ALJ found Dr. Nanda's opinion to be inconsistent with an August 1994 medical report indicating that plaintiff was able to manage his episodes of bowel incontinence and difficulty. The government also notes that the ALJ found Dr. Nanda's opinion in-

consistent with Dr. Shabbir's testimony that plaintiff's incontinence could not have been a severe condition since it was not consistently mentioned in the record.

Plaintiff suggests that the ALJ should have disregarded Dr. Shabbir's testimony about plaintiff's incontinence because plaintiff was not permitted to cross-examine Dr. Shabbir regarding his lack of expertise in the field of gastroenterology. The government appears to concede this point, but responds that although the ALJ considered Dr. Shabbir's testimony regarding plaintiff's incontinence, his opinion was irrelevant because the evidence established that plaintiff was able to manage his bowel incontinence. In support of this argument, the government again refers to the August 1994 medical report indicating that plaintiff was able to manage his episodes of bowel incontinence and difficulty.

The court disagrees that the August 1994 medical report constitutes evidence sufficiently substantial to overcome the considerable evidentiary weight to which Dr. Nanda's opinion, as that of a board certified gastroenterologist and plaintiff's treating physician, is entitled. Moreover, the court has examined the record and finds no additional evidence which, in conjunction with the August 1994 medical report, might otherwise constitute substantial evidence supporting the ALJ's decision to discount Dr. Nanda's opinion and plaintiff's own testimony. Accordingly, the ALJ's determination that plaintiff was not disabled due to fecal incontinence will be reversed.

**IT IS THEREFORE BY THE COURT ORDERED** that plaintiff's motion for reversal of the Social Security Commissioner's denial of disability insurance benefits under Title II of the Social Security Act (Doc. 11) is granted in part and denied in part. Plaintiff's motion is granted with respect to defendant's denial of benefits due to plaintiff's physical impairment. Plaintiff's motion is denied with respect to defendant's denial of benefits due to mental impairment.

**IT IS FURTHER ORDERED** that the decision of the Social Security Commissioner is **REVERSED** and **REMANDED** for an award of disability insurance benefits as of December 12, 1994, the date of onset of

plaintiff's physical impairment alleged in his application.