**Samuel TRIMIAR, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.**

No. 90–5249.

United States Court of Appeals, Tenth Circuit.

April 23, 1992.

Paul F. McTighe, Jr., Tulsa, Okl., for plaintiff-appellant.

Peter Bernhardt, Asst. U.S. Atty., Tulsa, Okl. (Tony M. Graham, U.S. Atty., with him on the brief), for defendant-appellee.

Before ANDERSON and EBEL, Circuit Judges, and ANDERSON, Senior District Judge *.

ALDON J. ANDERSON, Senior District Judge.

Appellant Samuel Trimiar, a fifty-three year old bus driver who claims to be permanently disabled as a result of injuries to his right arm, appeals a district court decision affirming the denial by the Secretary of Health and Human Services ("Secretary") of an open period of benefits under the Social Security Act. We affirm the district court's decision, because it is supported by substantial evidence when the record is considered as a whole.

## I. BACKGROUND

On July 20, 1982, Appellant sustained injuries to his right arm when he fell through a plate glass window.[1] At the time, Appellant was forty-three years old and was employed as a bus driver in Tulsa, Oklahoma. Over the ensuing three years, Appellant required surgery and physical therapy, but nevertheless was left with permanent partial impairment of the right arm. On August 9, 1984, after initial denial by the Social Security Administration, Appellant was awarded retroactively a closed period of disability by a Health and Human Services Administrative Law Judge ("ALJ").

On October 30, 1985, Appellant filed an application for permanent disability due to radial nerve palsy in his right arm. His request was denied initially and upon reconsideration by the Social Security Administration. Appellant sought and was granted review by an ALJ who, on December 16, 1986, decided that Appellant was not disabled and was not therefore entitled to the

---

* Honorable Aldon J. Anderson, Senior United States District Judge for the District of Utah, sitting by designation.

1. Unless otherwise specifically noted, all facts are drawn from the Decision of the Administra-
tive Law Judge John M. Slater [hereinafter referred to as Decision of the ALJ] found in App. to Appellant's Br., Vol. II, at 11–14.

benefits he claimed. The Appeals Council of the Department of Health and Human Resources vacated this decision and ordered further proceedings, including testimony from a vocational expert. After a hearing on November 25, 1987, an ALJ found that Appellant could perform light work [2] without the use of his right arm and that he did not have nonexertional limitations.[3] The ALJ concluded that Appellant was not disabled. Decision of the Administrative Law Judge Bruce L. Evans, App. to Appellant's Br., Vol II, at 30. The Appeals Council remanded for further testimony from a vocational expert to determine whether "a significant number of unskilled jobs [are] available to the claimant, given his exertional and non-exertional limitations." Order of Appeals Council, *id.* at 20. On October 30, 1988, after further testimony, an ALJ concluded that Appellant was not disabled because a significant number of jobs existed in the local or national economy which Appellant could have performed. Decision of the ALJ, *id.* at 11–14. On June 7, 1989, the Appeals Council denied Appellant's claim for further review and let the decision stand as a final decision of the Secretary. Action of Appeals Council on Request for Review, *id.* at 7–8.

Appellant filed a complaint in the United States District Court for the Northern District of Oklahoma, seeking review of the Secretary's final decision pursuant to 42 U.S.C. § 405(g). Compl., App. to Appellant's Br., Vol. I, at 1–3. After oral argument, a United States Magistrate submitted findings and recommended that the ALJ's decision be affirmed. Findings and Recommendations of U.S.Magis., *id.* at 7–12. By order of September 25, 1990, the District Court adopted the findings and recommendation of the Magistrate and affirmed the Secretary's decision. Order of Dist.Ct., *id.* at 13. Appellant appealed to this Court. Notice of Appeal, *id.* at 14. We have jurisdiction to review the final decision of the United States District Court pursuant to 28 U.S.C. § 1291.[4]

## II. DISCUSSION

On appeal, Appellant's principal contention is that the findings of the ALJ, the Appeals Council, and the District Court were not based on substantial evidence and should be reversed. Appellant's Br. at 6–11. In making this argument, Appellant raises two grounds of error: (1) that the testimony of the vocational expert was favorable to the Appellant and required a different conclusion; and (2) that the Appellant should have been found disabled pursuant to the medical-vocational guidelines (the "grids").[5] *Id.* at 11–16. Our review of the record convinces us that there is substantial evidence to support the ALJ's conclusion. Accordingly, we must reject the grounds of error set forth by the Appellant and affirm the District Court.

### A.

At the outset, the Court notes its function in this matter. Judicial review of the Secretary's final decision is limited in scope

---

**2.** "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b) (1991).

**3.** Nonexertional limitations are "medically determinable impairments, such as skin impairments, epilepsy, and impairments of vision, hearing or other senses, postural and manipulative limitations, and environmental restrictions [that] do not limit physical exertion." *Id.* at § 404.1545(d).

**4.** Section 1291 reads, in part: "The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the districts courts of the United States."

**5.** The grids are tables promulgated by the Secretary to aid in the process of determining disability by evaluating "whether there exist sufficient jobs that can be performed given the claimant's age, education, and physical limitations." *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991); 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1991). Thus, if the ALJ plots the claimant's position on the grids, he can readily arrive at a finding of disabled or not disabled. "The grids [however] may serve only as a framework to determine whether sufficient jobs remain within the claimant's range of residual function capacity." *Hargis*, 945 F.2d at 1490 (citation omitted). Without the grids, the ALJ must elicit testimony from a vocational expert to testify regarding the claimant's work capability.

by 42 U.S.C. § 405(g).[6] Our role "on review is to determine whether the Secretary's decision is supported by substantial evidence." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir.1987) (citation omitted). "The court may not reweigh the evidence or try the issues *de novo* or substitute its judgment for that of the Secretary." *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir.1989) (citation omitted). For our purpose, "[s]ubstantial evidence is more than a scintilla; it is such relevant evidence as a reasonable mind might deem adequate to support a conclusion." *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir.1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A finding of " 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.' " *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir.1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1137 (5th Cir.1973)).

■ The Appellant bears the burden of proving disability within the meaning of the Social Security Act. *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir.1984). Having shown that his disability precludes return to his prior employment, the "burden of going forward shifts to the Secretary, who must show that the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (citations omitted). Social Security Regulations mandate that the ALJ who determines a claim for benefits under the Social Security Act follow a five-step evaluation: (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's im-

pairment meets an impairment listed in appendix 1 of the relevant regulation;[7] (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work. 20 C.F.R. § 404.1520(b)–(f) (1991). "If at any point in the process the Secretary finds that a person is disabled or not disabled, the review ends." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir.1988) (citations omitted).

In the present case, the ALJ reached the fifth step in the evaluation process: whether the impairment precludes the claimant from doing any work. Decision of the ALJ, App. to Appellant's Br., Vol. II, at 14, ¶¶ 4–8. Relying on testimony from a vocational expert, the ALJ found that the Appellant retained the physical capacity to engage in light work of a nature not requiring use of the right arm. *Id.* at 12–13. Although the Appellant is unable to perform his past relevant work, his vocational skills were found to be transferable to other jobs which exist in substantial numbers in the region where he resides and in the national economy. *Id.* at 13. Accordingly, the ALJ concluded that the Appellant was not disabled under the Social Security Act at any time through the date of the decision. *Id.* at 14. We agree.

### B.

■ Appellant first contends that the ALJ's finding of no disability is flawed. Appellant argues that he cannot engage in any other kind of substantial gainful activity which exists in significant numbers in the national economy and is therefore disabled.[8] Appellant's Br. at 11–14. This con-

---

6. Section 405(g) reads, in part:
 Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Secretary may allow.... The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.

7. Appendix 1 is a listing of impairments for each separate body system. 20 C.F.R. Pt. 404,

Subpt. P, App. 1 (1991). If a claimant has an impairment listed in appendix 1 that lasts for a durational period specified in the appendix, the claimant is found disabled without consideration of age, education, and work experience. 20 C.F.R. § 404.1520(d) (1991). The ALJ determined that the Appellant did not have an appendix 1 impairment. Decision of the ALJ, App. to Appellant's Br., Vol. II, at 14, ¶ 5.

8. Disability refers to the following:
 [When] physical or mental impairment or impairments are of such severity that [the claim-

tention lacks support in the record. Appellant apparently cannot return to his former occupation as a bus driver;[9] however, the vocational expert testified that the Appellant could perform work in three unskilled jobs: escort driver, recreational facility attendant, and telephone solicitor. Tr. of Hr'g, App. to Appellant's Br., Vol. II, at 124–25. The expert testified that 650 to 900 such jobs exist in the state of Oklahoma.[10] *Id.* at 126. The ALJ found that "[t]hese jobs exist in substantial numbers in the region in which the claimant resides and in the national economy." Decision of the ALJ, *id.* at 14, ¶ 9. Resolution of the issue raised by Appellant requires this Court to address what constitutes a "significant number" for purposes of the statute.

This Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a "significant number" and rejects the opportunity to do so here. Our reluctance stems from our belief that each case should be evaluated on its individual merits. Notwithstanding our reluctance, we note that several factors go into the proper evaluation of significant numbers. The Eighth Circuit has succinctly stated these factors:

> A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on.

*Jenkins v. Bowen,* 861 F.2d 1083, 1087 (8th Cir.1988) (quoting *Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir.1988)). "The decision should ultimately be left to the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation."[11] *Id.*

In reviewing the transcript of the hearing and the decision of the ALJ, we are convinced that the ALJ gave proper consideration to these factors. First, the ALJ considered the combination of impairments possessed by the Appellant and acknowledged the "limited function of the right hand." Decision of ALJ, App. to Appellant's Br., Vol. II, at 12. "The medical evidence establishes that the claimant is impaired as result of radial nerve pulsey [sic] of the right arm"; nevertheless, "[t]he claimant retains the residual function capacity to engage in work of a light nature not requiring use of his right upper extremity." *Id.* at 14, ¶¶ 5 & 6. Further, we cannot question the reliability of the vocational expert's testimony. The ALJ gave

---

ant] is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (1991).

9. The Magistrate noted in his findings that the Appellant admitted in 1989 that he was working as a bus driver. Findings and Recommendations of U.S.Magis., App. to Appellant's Br., Vol. I, at 11–12. Such an admission would have been sufficient grounds to deny Appellant's claim at the first step of the five part evaluation process detailed above.

10. The vocational expert broke down the job numbers as follows: (1) 50 to 100 escort drivers; (2) 600 ticket takers, ushers, or attendants at recreational facilities, with another 200 exclusively taking tickets and ushering; and (3) 200 telephone solicitors. Transcript of Hearing, App. to Appellant's Br., Vol. II, at 126. This gives a range of 850 to 1100 potential jobs in the work force that Appellant is capable of performing. Appellant argues that the ticket taker positions should not be considered, because the job would require the Appellant to tear tickets with his teeth. Appellant's Br. at 13–14. Even if we accepted this argument, it would reduce the universe of available jobs by only 200, leaving a range of 650 to 900 jobs. We are not convinced, however, that Appellant could not find means to perform such a job without resort to tearing tickets with his teeth.

11. The *Jenkins* court found that a relevant job market of 500 jobs constituted significant numbers in the local economy. 861 F.2d at 1087.

due consideration to the education and experience of the expert [12] and probed regarding the expert's conclusion that Appellant could perform work that exists in significant numbers.[13] Tr. of Hr'g, *id.* at 123–34.

Also, the ALJ considered the Appellant's capacity to travel to the assigned work, by receiving testimony regarding the Appellant's capacity to drive long distances. *Id.* at 128. In response to a question regarding the claimant's ability to drive distances over 150 miles, the expert noted: "I don't think the fatigue of the, the [sic] arm would be a terribly big problem. I think he'd get the use of that. A lot of this driving—You know, if you're on the highway, for example, there's not much that

demand placed on it." *Id.* The record, therefore, reflects neither physical nor practical limits on the Appellant's ability to travel long distances. *Id.* Additionally, the transcript indicates questioning regarding the isolated nature of the work. To this end, the ALJ heard testimony regarding the number of jobs,[14] the percentage of jobs,[15] and the location of jobs [16] that are within the Appellant's capacity. Finally, we are satisfied that the ALJ properly considered the type and the availability of work. Testimony was elicited regarding what jobs the Appellant could perform; [17] whether his skills were transferable to these jobs; [18] whether and to what extent he would require training for these jobs; [19]

**12.** The ALJ questioned the expert as follows: "And we have a resume of your experience and background here. Is it substantially correct?" Tr. of Hr'g, App. to Appellant's Br., Vol. II, at 122. The expert responded affirmatively to this query. *Id.* at 123.

**13.** As detailed below, there is a great deal of testimony regarding the expert's conclusions, but the record reflects no questioning regarding the source of the expert's conclusions.

**14.** The ALJ questioned the expert as follows:
Q How many of these jobs you did mention exist in the local economy?
A Well, I'd say 50 to 100 escort drivers in Oklahoma. There's 600 people doing attendant work at amusement—in recreational facilities and probably another 200 just ticket taking and ushering.
Q And the telephone solicitation?
A I'd say another 200.
*Id.* at 126.

**15.** Claimant's counsel questioned the expert regarding the percentage of jobs:
Q ... If you say there's 50 jobs of this type [escort driving] in Oklahoma, that would seem to be a very minor percentage of the types of jobs available or [sic] the work force in the area. So—
A Well, it, it is.
*Id.* at 129. A similar exchange occurred with respect to the telephone solicitation jobs:
Q But, but that's still a, a small percentage of, of the job force, wouldn't you say?
A Oh, yeah. Sure.
*Id.* at 131.

**16.** When questioned by the claimant's attorney, the expert clarified the location of these jobs. The expert testified that "there are somewhere between 50 to 100 people performing [escort driving] in Oklahoma at this time." *Id.* at 129. The 200 telephone solicitation jobs are "pretty much in the Northeastern [sic] part of the State

[sic]." *Id.* at 131. With respect to recreational attendants, the expert testified there were 600 such jobs in the state of Oklahoma. *Id.* at 133.

**17.** During the hearing, the ALJ questioned the expert regarding whether there would be "unskilled positions that—entry type level, level position [sic] that a person with this GED and this type of background might be able to perform?" *Id.* at 124. The expert's lengthy response included the following:

But, but I think that, that from just a capability standpoint that it's possible to drive an escort vehicle. I think it is possible, for example, to do telephone solicitations ... There, there might be—He might be able to do some attendant type of jobs where you—Like say at amusement park, recreational facility, ticket taking, ushering.
*Id.* at 124–25.

**18.** With respect to whether the claimant's "past work involves any skills that would be transferable ... to work that would be consistent with his handicap," the expert responded as follows:

The skill he might have had in business, running the business has not really been specified whether he, you know, there might have been a certain amount of sales involved in that, supervision of other employees, bookkeeping, tax records. I don't know what purchasing supplies, planning. Those kinds of things are possible but I don't know how he could transfer that to a job unless he would be doing something more entrepreneurial.
*Id.* at 127.

**19.** Regarding training, the expert testified as follows:

Well, all I can tell you is that people are hired to do this right out of, you know, high school. It does not necessarily require prior work experience. You know, I'm not saying there

and whether other people with similar physical limitations performed these jobs.[20]

We need not strain at numbers in reaching our conclusion that the ALJ's decision is founded on substantial evidence on the record. The record indicates that the ALJ weighed the relevant factors in reaching his conclusion. Admittedly, some of the testimony favors the claimant's position. Nonetheless, we cannot say that the record when taken as a whole does not support the ALJ's conclusion. We do not presume to interpose our judgment for that of the ALJ.

### C.

■ Appellant next asserts that the ALJ erred in using testimony of a vocational expert rather than relying on the medical-vocational guidelines ("grids"). Appellant's Br. at 14–16. Some explanation of the grids is necessary to demonstrate our disagreement with the Appellant's contention. The grids are tables prepared by the Secretary which evaluate a claimant's ability to work by matching the claimant's age, education, and work experience with his work capability. 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1991). Again, the grids "help evaluate whether there exist sufficient jobs that can be performed given the claimant's age, education, and physical limitations." *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir.1991). " '[T]he grids are a shortcut that eliminate the need for calling in vocational experts.' " *Bohr v. Bowen*, 849 F.2d 219, 221 (6th Cir.1988) (quoting *Hurt v. Secretary*, 816 F.2d 1141, 1142–43 (6th Cir.1987)). The grids set forth presumptions regarding whether jobs exist in significant numbers in the national economy given the particular limitations possessed by the claimant.[21] *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir.1987).

The grids are divided into five residual function categories based on the claimant's residual function capacity.[22] 20 C.F.R. § 404.1567 (1991). Residual function capacity refers to "what [the claimant] can still do despite [his] limitations." *Id.* at § 404.1545(a). Each residual function category measures the exertional level required to perform work within the category. Exertional level refers to the claimant's strength or ability to walk, stand, lift, carry, push, pull, reach, and handle. *Id.* at § 404.1545(b). Each residual function category is subdivided by age, education, and work experience. By matching the claimant's age, education, and work experience with his residual function capacity, the Secretary can determine whether the claimant is disabled.

Notwithstanding the ease with which the grids may be applied, there are two situations in which the grids may not be applied. First, the "grids may not be applied conclusively in a given case unless the claimant's characteristics precisely match the criteria of a particular" grid. *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir.1984). Ordinari-

---

wouldn't be some on-the-job training. But unskilled work, as long as it can be learned in 30 days, 30 days of orientation, still can be considered unskilled. And I think that, you know, particularly if you consider private— that he ran or operated a private janitorial service that he would have enough ability to, to learn to do this in 30 days.

*Id.* at 130.

**20.** Although not touching directly on this point, the ALJ had before him testimony regarding the problems a person with the claimant's handicap would have with the suggested work. Addressing this point, the expert noted:

Like I say, there's no job that he could—at the unskilled level that I know of he could handle just as well, you know, with the limitation he has as he would if he didn't have the limitation.

*Id.* at 135.

**21.** Technically, the grids presume an occupational base which reflects the number of jobs in the national economy for each grid. If a claimant fits within a "not disabled" grid category, the Secretary presumes that sufficient jobs exist in the national economy that the claimant can perform.

**22.** The five residual function categories are sedentary, light, medium, heavy, and very heavy work. 20 C.F.R. § 404.1567 (1991). The sedentary and light work categories are relevant to this appeal. "Sedentary work involves lifting no more than 10 pounds at a time." *Id.* at § 404.-1567(a). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.* at § 404.1567(b).

ly, imprecision precluding use of the grids arises because the claimant does not fall within a specific residual function category or because the claimant's exertional limitations prevent him from doing a full range of work in his residual function category. For example, the Secretary has found that persons, such as the Appellant, who have lost the use of an arm, referred to by the Secretary as an upper extremity, have a potential occupational base between the sedentary and light work grids. Social Security Rule 83–12, at 5–6 (1983). Such individuals have been known to perform work at all exertional levels, but the total occupational base is less than that represented by a full range of light work. *Id.* Moreover, these individuals are not expected to perform sedentary work that requires the use of both hands. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h). Because the Appellant has lost bimanual dexterity, the ALJ found that his individual limitations did not fit the classifications within the grid. Therefore, a proper determination of disability required expert testimony regarding the number of jobs available in the local or national economy. *Cf. Channel v. Heckler,* 747 F.2d 577, 580 (10th Cir.1984).

Second, "where nonexertional impairments are also present, the grids alone cannot be used to determine the claimant's ability to perform alternative work." *Campbell v. Bowen,* 822 F.2d 1518, 1523 n. 2 (10th Cir.1987) (citation omitted). The Secretary defines nonexertional impairments as "medically determinable impairments, such as skin impairments, epilepsy, and impairments of vision, hearing, or other senses, postural and manipulative limitations." 20 C.F.R. § 404.1545(d) (1991).[23] The presence of nonexertional limits reduces the potential occupational base reflected in the grids. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Sec. 201.00(h). For example, a claimant may possess nonexertional limitations in his manual dexterity which limit his ability to perform tasks with his fingers and fingertips. These nonexertional limitations reduce the claimant's potential occupational base as set forth in the grids. *Id.; see also Channel v. Heckler,* 747 F.2d at 580.

"[W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations," 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2) (1991), or "[w]here exertional limitations prevent the claimant from doing the full range of work specified in his assigned residual function category," *Campbell,* 822 F.2d at 1523 n. 2, the grids "do not direct a conclusion of disabled or not disabled." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a). In such a case, vocational expert testimony is required to determine "whether jobs exist for someone with the claimant's precise disabilities." *Ash v. Sullivan,* 748 F.Supp. 804, 809 (D.Kan.1990) (citation omitted). "[T]he [grids] ... are considered in determining first whether a finding of disabled may be possible based on strength limitations alone." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2). If the grids reflect a finding of not disabled, they "can be used only as a framework for determining what the claimant can still do in light of his impairments." *Campbell,* 822 F.2d at 1523 n. 2. Without the grids, the ALJ must resort to testimony from a vocational expert to establish that a significant number of jobs exist in the national economy which the claimant can perform.

This is precisely the situation that confronted the ALJ in the present case. Appellant possesses nonexertional limitations arising from the loss of use of his right arm. The ALJ properly determined that the grids, which reflected a finding of not disabled for Appellant's specific age, education, and work experience, were inapplicable. Therefore, the ALJ relied on expert

---

**23.** As noted above, the grids consider only the exertional limits of the individual, as measured by the claimant's ability to engage in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling. 20 C.F.R. § 404.1545(b). Each residual function category considers a full occupational base, or the number of jobs available in the national economy, that the claimant can perform within his range of exertional capability. *Id.* at Pt. 404, Subpt. P, App. 2, § 200.00(e).

**1334**

testimony to fully ascertain Appellant's status.

Because the Appellant is not disabled under the grids, his claim would not have proceeded this far if the grids alone were determinative. Appellant, however, falls squarely within each exception; therefore, his individual characteristics render the grids inoperative. The Secretary's determination that cases such as the Appellant's require individual consideration mandated that the ALJ rely on testimony from a vocational expert. Having reviewed the record and the relevant authority, we conclude that the ALJ's determination is supported by substantial evidence.

### III. CONCLUSION

This Court is not unsympathetic to the Appellant's situation. Nevertheless, the Court is obliged to follow the statutory mandate established by Congress. Applying the relevant standard of review, we are bound to deny this appeal. Judgment of the district court is AFFIRMED.