**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 30 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

RUEY O. PATTY,

      Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

      Defendant-Appellee.

No. 98-7121
(D.C. No. CV-97-281-S)
(E.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **PORFILIO** , **BARRETT** , and **HENRY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff Ruey O. Patty appeals a district court order affirming the Commissioner's decision denying him social security disability benefits. We review the Commissioner's decision on the entire record to determine whether the findings are supported by substantial evidence and whether correct legal standards were applied. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1047 (10th Cir. 1993).

Plaintiff applied for benefits in 1994, claiming disability since February of 1987 when he fell from a truck and fractured his hip. Following surgery to insert a pin in the hip, plaintiff spent approximately six weeks in traction. He returned to his doctor in 1988, 1989, and 1990, on an annual basis, with reports of intermittent pain, but "doing okay" and with symptoms under control. See Appellant's App. Vol. II at 137-40. In 1994, he reported his symptoms as coming and going. He faces the possibility of a hip replacement at some point in the future. His final visit to his doctor was for evaluation of back pain, and his doctor recommended over-the-counter anti-inflammatory medication and active exercise. See id. at 135. No physician has placed restrictions on plaintiff's activities (other than taking it easy on his hip) or ability to work, except for the period immediately following his surgery and traction, nor has any doctor suggested plaintiff is permanently disabled.

Plaintiff testified that on a daily basis he rises, watches the news on TV, reads the newspaper, drives into town to visit the post office, the bank and perhaps a relative. He returns home, lies down for an hour before lunch, goes outdoors, walks some, and takes an afternoon nap. The rest of the day he spends reading and watching TV. During the relevant period (i.e., prior to December of 1992), plaintiff was an amateur radio operator. Appellant's App. Vol. II at 37-38.

The Administrative Law Judge (ALJ) concluded that plaintiff was not disabled at step five of the sequential analysis. See William v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps). The ALJ further determined that plaintiff had the residual functional capacity for a reduced range of light work, restricted by an inability to stand more than thirty minutes at a time (not to exceed a total of three hours in an eight hour day) and an inability to do more than occasional stooping and bending. See Appellant's App. Vol. II at 14.

Plaintiff claims that the ALJ failed to properly evaluate the evidence of his pain and physical impairments and to consider the vocational impact of those impairments and to show plaintiff could perform a significant number of alternative jobs based on the vocational expert (VE)'s testimony.

First, plaintiff complains the ALJ misstated his doctor's suggestion that plaintiff consider "an educational program for a non labor type of work," see id. at 140, by finding the doctor had stated plaintiff "*could* do non labor type work."

See id. at 12 (emphasis ours).  The inconsistency is unimportant.  The doctor obviously thought plaintiff had the physical ability to perform non-manual labor.  Indeed, the doctor's notations reflect several recommendations that plaintiff "obtain some rehabilitation training for a non-physically stressful work,"     see id. at 141, that plaintiff "look at an educational program for a non labor type of work," see id. at 140, and that he be retrained "for another type of job,"     see id. at 139.

Next plaintiff claims the ALJ erred in determining plaintiff could stand a total of three and sit a total of five hours out of an eight hour workday.  The ALJ's finding is consistent with plaintiff's testimony at the hearing that he could be on his feet but thirty minutes at a time, followed by a break, after which plaintiff testified he could tolerate two or three more hours of standing.     See id. at 43-44.  Plaintiff's daily activities, by his own testimony, supported the ALJ's determination.

Plaintiff also contends that the ALJ failed to order a consultative examination.  We note, however, that plaintiff did not request an examination, nor does he suggest what the examination would have disclosed.     See Hawkins v. Chater , 113 F.3d 1162, 1168 (10th Cir. 1997) (holding that absent counsel's request for a consultative examination, an ALJ is not ordinarily under a duty to

order one unless the need is clearly established in the record).  There was no need for a consultative examination presented in this case.

Plaintiff further argues that the ALJ failed to discuss testimony regarding plaintiff's need to lie down and rest two times during the day.  While such discussion would have been helpful, plaintiff does not explain how this failure undermines the ALJ's ultimate determination.  Plaintiff testified simply that he lay down twice a day as a matter of daily activity, not that he needed to do so to alleviate pain or for any other reason.    See Appellant's App. Vol. II at 37-38.

Plaintiff next claims the ALJ erred by refusing to accept the VE's testimony and improperly suggesting to the VE that the VE should consider light delivery jobs for plaintiff.  The initial confusion came because the VE did not fully understand the qualifications of the ALJ's hypothetical question.  Specifically, the VE was concerned about plaintiff "not being able to be on his feet for three hours . . . [because] unskilled light work is usually being on your feet six of the eight hours."  See id. at 49.  The VE continued that this hypothetical would exclude "any normal light job that I might list, if I'm interpreting what you're saying correctly."   See id.  The ALJ clarified the hypothetical by asking if there were light jobs at which a person did not need to be on his feet the whole eight hours or even six hours.  The VE then identified several positions, including cashier, courier driver, and hotel/motel clerk, that a person with plaintiff's

limitations could perform. See id. at 49-51. Although the VE did not specifically recite the ALJ's factors in his answers, the ALJ could properly assume the VE "framed his answers based on the factors the ALJ told him to take into account." See Whitehouse v. Sullivan, 949 F.2d 1005, 1006 (8th Cir. 1991).

Plaintiff contends that because the ALJ found that plaintiff's testimony was credible and failed to discredit plaintiff's need to lie down during the day, that plaintiff's "testimony regarding laying [sic] down must be taken as true by this Court." Appellant's Br. at 34. We disagree. The ALJ found plaintiff's testimony credible only to the extent of being limited to a reduced range of light work. Appellant's App. Vol. II at 14. The ALJ did not find that plaintiff needed to lie down twice a day. This is a credibility issue, peculiarly the province of the factfinder and a determination not to be upset when supported by substantial evidence. See Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990).

Finally, plaintiff claims that the job of hotel/motel clerk should not be considered as a potential alternative job he can perform because it is listed in the Dictionary of Occupational Titles as semiskilled, in view of plaintiff's lack of transferrable skills. See id. at 48. Elimination of this one job category, however, leaves the jobs of cashier and courier driver (or deliverer), which the VE testified existed in sufficient numbers in the regional and national economies. See id. at

-6-

50-51.  The VE's testimony further reflects that he was considering a reduced number of these jobs based on the condition that plaintiff could not be on his feet a full six out of eight hours.    See id. at 49-50.  The ALJ therefore properly determined that a sufficient number of those jobs existed in the national and local economies.   See Trimiar v. Sullivan  , 966 F.2d 1326, 1330-32 (10th Cir. 1992).

We conclude the Commissioner's decision is adequately supported by substantial evidence in light of the entire record.  Accordingly, the judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.

Entered for the Court

John C. Porfilio
Circuit Judge