**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 7 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

JERRY RHODES,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner, Social Security
Administration,

      Defendant-Appellee.

No. 03-7125
(D.C. No. 03-CV-113-W)
(E.D. Okla.)

ORDER AND JUDGMENT *

Before **HARTZ** , **McKAY** , and **PORFILIO** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Jerry Rhodes appeals from an order of the district court affirming the Social Security Administration's decision denying his application for disability insurance benefits. We exercise jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand this matter to the Commissioner for further proceedings.

Plaintiff claims that he has been unable to work since October 14, 2000 due to lung problems and back pain. After his application for disability benefits was denied initially and on reconsideration, a de novo hearing was held before an administrative law judge (ALJ). Subsequently, in a decision dated March 27, 2002, the ALJ denied plaintiff's application for disability benefits, concluding that plaintiff was not disabled because: (1) although he suffered from severe impairments in the form of chronic obstructive pulmonary disease and osteoarthritis which prevented him from performing his past relevant work as a heavy equipment operator and pipeline foreman, he retained the residual functional capacity (RFC) to perform sedentary work; and (2) based on the testimony of the vocational expert at the hearing before the ALJ, he was capable of performing other jobs that existed in significant numbers in the national economy.

In January 2003, the Appeals Council denied plaintiff's request for review of the ALJ's decision. Plaintiff then filed a complaint in the district court. After

the parties consented to having a magistrate judge decide the case, a magistrate judge entered an order affirming the ALJ's decision denying plaintiff's application for disability benefits. This appeal followed.

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). In reviewing the ALJ's decision, "we neither reweigh the evidence nor substitute our judgment for that of the agency." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, we review the ALJ's decision only to determine whether the correct legal standards were applied and whether the ALJ's factual findings are supported by substantial evidence in the record. *Doyal*, 331 F.3d at 760. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988).

In this appeal, plaintiff claims the ALJ's decision denying his application for disability benefits must be reversed because: (1) there is new and material evidence that should be included in the administrative record; (2) the ALJ's decision that plaintiff was not credible was not supported by substantial evidence

in the record; (3) the ALJ's RFC determination was not supported by substantial evidence in the record; and (4) the ALJ's conclusion that plaintiff can perform other jobs that exist in significant numbers in the national economy was not supported by substantial evidence in the record. Having carefully reviewed the record and the pertinent legal authorities, we conclude that plaintiff's first three arguments are without merit. We agree with plaintiff, however, that the ALJ committed reversible error by failing to properly analyze the issue of whether plaintiff could perform other jobs that exist in significant numbers in the national economy.

## A. New Evidence.

Plaintiff submitted new evidence to the district court that was not available at the time of the administrative hearing before the ALJ. The evidence consisted of: (1) medical records from the Sparks Regional Medical Center in Fort Smith, Arkansas, documenting treatment that plaintiff received at the center in October 2002, *see* Aplt. Br., Att. B; and (2) a "Rating Decision" from the United States Department of Veterans Affairs dated May 22, 2003 and a related letter to plaintiff from the Department dated June 5, 2003, *id.*, Att. C. Relying on 42 U.S.C. § 405(g), plaintiff argued that, in light of this new evidence, the district court was required to remand this matter to the Commissioner for a new disability

determination. The district court denied plaintiff's request for a remand, and we agree with the district court that a remand is not appropriate.

Section 405(g) provides as follows:

> The [district] court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . . .

42 U.S.C. § 405(g). "In order to find a remand appropriate, we normally must determine that the new evidence would have changed the [Commissioner's] decision had it been before [her]." *Hargis v. Sullivan*, 945 F.2d 1482, 1493 (10th Cir. 1991). "Implicit in this requirement is that the proffered evidence relate to the time period for which the benefits were denied." *Id.* Thus, it is well established that a remand will not be granted under § 405(g) if the new evidence shows only a "subsequent deterioration of the previously nondisabling condition." *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984); *accord Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997); *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988); *Bradley v. Bowen*, 809 F.2d 1054, 1058 (5th Cir. 1987); *Godsey v. Bowen*, 832 F.2d 443, 444-45 (7th Cir. 1987). In such cases, "the appropriate remedy [is] to initiate a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment." *Sizemore*, 865 F.2d at 712.

-5-

The district court denied plaintiff's request for a remand, concluding that a remand "is not required as the additional evidence presented by [plaintiff] would not have resulted in a different decision by the ALJ." Aplt. App. at 35. Although we agree with the district court that plaintiff did not meet his burden of showing that a remand is proper, *see Sizemore*, 865 F.2d at 711 ("[T]he party seeking remand bears the burden of showing that a remand is proper under Section 405.") (quotation omitted), we do not reach the issue of whether the additional evidence presented by plaintiff would have resulted in a different decision by the ALJ. Instead, we affirm the district court on alternative grounds. [1]

---

[1] There is a split of authority among the circuits concerning the standard of review to be used in reviewing a decision of a district court regarding a request for a new evidence remand under § 405(g). *Compare Vega v. Comm'r of Social Security*, 265 F.3d 1214, 1218 (11th Cir. 2001) (conducting de novo review), *and Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999) (same), *with Wainwright v. Sec'y of Health & Human Servs.*, 939 F.2d 680, 682 (9th Cir. 1991) (conducting abuse of discretion review). Although this court has addressed the standard of review in an unpublished order and judgment, *see Henderson v. Dep't of Health & Human Servs.*, No. 93-6264, 1994 WL 18076, at **1-**2 (10th Cir. Jan. 24, 1994) (following *Wainwright* and conducting abuse of discretion review), we have not definitively resolved the issue in a published decision. The question of what standard of review to apply does not prevent us from affirming the district court on alternative grounds, however, because, even if the abuse of discretion standard of review applies, we conclude as a matter of law that it would have been an abuse of discretion for the district court to grant a remand in this case. *See Ashby v. McKenna*, 331 F.3d 1148, 1151 (10th Cir. 2003) (holding that "with respect to a matter committed to the district court's discretion, we cannot invoke an alternative basis to affirm unless we can say as a matter of law that it would have been an abuse of discretion for the trial court to rule otherwise") (quotation omitted).

-6-

First, as noted above, the medical records from the Sparks Regional Medical Center document treatment that plaintiff received at the center in October 2002, and plaintiff's counsel claims that he did not receive these records until after the Appeals Council denied plaintiff's request for review in January 2003. *See* Aplt. Br. at 15. Counsel has offered no explanation, however, as to why the records could not have been obtained and submitted to the Appeals Council between October 2002 and January 2003. Consequently, counsel has not established good cause for the failure to submit the records to the Appeals Council, and plaintiff is therefore not entitled to a remand based on the Sparks Regional Medical Center records. *See Cummings v. Sullivan*, 950 F.2d 492, 500 (7th Cir. 1991) (stating that § 405(g) "require[s] good cause for a failure to submit new evidence to the ALJ *and* the Appeals Council").

Second, even if plaintiff could establish good cause for the failure to submit the Sparks Regional Medical Center records to the Appeals Council, we conclude that the records do not relate to the relevant time period before the ALJ issued his decision in March 2002. Instead, the records show only a subsequent deterioration of plaintiff's back impairment.

Specifically, the medical records in the administrative record show that plaintiff was initially diagnosed in September 2001 as suffering from an acute myofascial strain in the lumbar spine. *See* A.R. at 166. In addition, X-ray and

-7-

computerized tomographic imaging studies performed in September 2001 showed that plaintiff had what appeared to be old compression fractures of the first and fifth lumbar vertebral bodies. *Id.* at 171-72. The Sparks Regional Medical Center records show, however, that plaintiff was subsequently diagnosed in October 2002 -- six months after the ALJ issued his decision -- as suffering from "L5 radicular pain right side secondary to vertebral compression fracture." Aplt. Br., Att. B at 5. This is the first reference in plaintiff's medical records to a radicular syndrome of pain, [2] and there is no indication in the administrative record that plaintiff was suffering from this condition prior to March 2002. Accordingly, we hold, as a matter of law, that the Sparks Regional Medical Center records show only a subsequent deterioration of plaintiff's back impairment. As a result, the records do not relate to the time period for which benefits were denied, and they cannot provide a proper basis for a remand under § 405(g). *See Szubak*, 745 F.2d at 833.

Finally, the "Rating Decision" from the United States Department of Veterans Affairs dated May 22, 2003 and the related letter to plaintiff from the Department dated June 5, 2003 suffer from the same defect. *See* Aplt. Br., Att. C.

---

[2] "Radiculopathy" is a "[d]isorder of the spinal nerve roots." *Stedman's Medical Dictionary* at 1484 (26th ed. 1995); *see also The Merck Manual*, § 14 at 1488 (17th ed. 1999) ("Nerve root dysfunction, which is usually secondary to chronic pressure or invasion of the root, causes a characteristic radicular syndrome of pain and segmental neurologic deficit.").

-8-

These documents show that plaintiff was diagnosed by the Department in May 2003 as suffering from "[r]adiculopathy, right [and left] lower extremity," and the Department determined that the radiculopathy was related to plaintiff's previously determined "service-connected disability of lumbosacral strain, complicated by osteoporosis and compression fracture of L1, L3 and L5." [3] *Id.* at 6, 7-8. Based on this diagnosis, the Department increased plaintiff's overall or combined service connected disability rating for his back impairment to 60%, and plaintiff was "granted entitlement to the 100% [disability] rate effective March 11, 2003, because [he is] unable to work due to [his] service connected disability/disabilities." *Id.* at 2. Importantly, these documents also state that October 3, 2002 was the first date when the medical evidence showed that plaintiff had signs of radiculopathy, and this statement is based on the information contained in the above-referenced medical records from the Sparks Regional Medical Center, which were part of the evidence considered by the Department. *Id.* at 6-8. Thus, like the Sparks Regional Medical Center records,

---

[3]    Although it is unclear when the Department of Veterans Affairs first diagnosed plaintiff as suffering from a lumbosacral strain as a result of his military service, we note that plaintiff's counsel has submitted documentation to this court showing that the Department increased plaintiff's disability rating for his lumbosacral strain from ten to forty percent in November 2001.    *See* Aplt. Br., Att. A. However, because plaintiff's counsel did not submit the November 2001 rating decision to either the ALJ or the Appeals Council, the decision is not part of the administrative record, and it is therefore not properly before this court.

the documents from the Department of Veterans Affairs also show only a subsequent deterioration of plaintiff's back impairment, and they cannot form the basis for a remand under § 405(g).

### B.  Credibility Determination.

The ALJ found that plaintiff retained the RFC to perform sedentary work. Specifically, the ALJ found that plaintiff had the capacity "to lift and/or carry ten pounds maximum, stand and/or walk about two hours out of an eight hour workday, and sit about six hours out of an eight hour workday."  A.R. at 17. Plaintiff disputes the ALJ's RFC determination, claiming that he cannot perform the sedentary work described by the ALJ due to the limitations caused by his lung problems and back pain.  The ALJ found that plaintiff's allegations regarding the limitations caused by his lung problems and back pain were not supported by the medical evidence or credible to the extent alleged.       *Id.* at 20-21.

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted).  "However, [f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Id.* (quotation omitted).  Further, according to Social Security Ruling 96-7p, 1996 WL 374186, at *2 (July 2, 1996):

-10-

The regulations describe a two-step process for evaluating symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness:

First, the adjudicator must consider whether there is an underlying medically determinable physical . . . impairment[] . . . that could reasonably be expected to produce the individual's pain or other symptoms. . . .

Second, once an underlying physical . . . impairment[] that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians . . . and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

In this case, there is objective medical evidence in the administrative record establishing that plaintiff has pain-producing back impairments (myofascial strain and compression fractures) and a lung impairment (chronic obstructive pulmonary disease) that is capable of producing shortness of breath and other breathing difficulties. Consequently, the ALJ was required to consider plaintiff's subjective complaints of severe pain and breathing limitations and "decide whether he

-11-

believe[d them]." *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir. 1993) (quotation omitted).

The ALJ found that plaintiff's allegations of disabling pain and breathing limitations were not credible because: (1) with respect to his allegations of pain, "[t]he objective evidence indicates that . . . he has exhibited relatively moderate symptoms[, and]. . . . [t]he record fails to demonstrate the presence of any pathological clinical signs, significant medical findings, or any neurological abnormalities which would establish the existence of a pattern of pain of such severity as to prevent the claimant from engaging in any work on a sustained basis"; (2) "[t]he claimant has received essentially conservative treatment;" (3) "[t]here is no medical evidence of any physician finding that claimant has had persistent and adverse side effects due to any prescribed medication"; (4) "[a]lthough the claimant stated that he was fairly restricted in his ability to sit, stand, walk, and lift, it does not appear that he has made similar complaints to his physicians"; (5) "claimant has not reported precipitating and aggravating conditions to his physicians"; and (6) "[t]he claimant's statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the claimant's own description of his activities and life style, the conservative nature and the infrequency of medical treatment required, the reports of the treating and examining physicians, the medical history, the findings made

-12-

on examination, and, most importantly, the claimant's demeanor at hearing and the marked discrepancies between his allegations and the information contained in the documentary reports." A.R. at 21.

Although some of the ALJ's findings come close to transgressing our decisions prohibiting the use of boilerplate language to support credibility determinations, *see, e.g., Hardman v. Barnhart*, 362 F.3d 676, 678-79 (10th Cir. 2004), we find reasonable the basic thrust of the ALJ's analysis, which is that plaintiff did not have a sufficient treatment history with respect to either his lung or back problems to support his claim that he cannot perform sedentary work. Thus, we conclude that the ALJ's credibility determination is supported by substantial evidence in the record.

## C. RFC Determination.

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence in the record because: (1) the ALJ failed to take into consideration the severe impairments related to: (a) the partial removal of plaintiff's right lung in 1996; and (b) the compression fractures in plaintiff's lumbar spine that were discovered in September 2001; and (2) the ALJ improperly rejected the opinion of Dr. Cheek, one of plaintiff's treating physicians. We conclude that plaintiff's arguments are without merit.

First, with respect to the upper lobectomy of plaintiff's right lung that was performed in 1996, the ALJ summarized the pertinent medical records relating to the operation in his decision. *See* A.R. at 17-18. The ALJ's decision also indicates that he reviewed all of the medical records pertaining to plaintiff's lung problems and took into account all of the limitations related thereto. *Id.* at 18. Further, the record indicates that the ALJ considered the medical records from September 2001 showing that plaintiff was diagnosed as suffering from an acute myofascial strain and compression fractures in the lumbar spine. *Id.* at 18-19. We therefore reject plaintiff's argument that the ALJ failed to consider all of his lung and back impairments.

Second, Dr. Cheek, who is apparently an osteopath, filled out a "Physical Residual Functional Capacity Evaluation" form for plaintiff, *see* A.R. at 163-65, and we will assume for purposes of this appeal that Dr. Cheek is one of plaintiff's treating physicians. In the evaluation form, Dr. Cheek evaluated plaintiff's back impairment, and he concluded that plaintiff could sit only for a total of four hours in an eight-hour workday. *Id.* at 163. If this is accurate, plaintiff is incapable of performing sedentary work. *See* Social Security Ruling 96-9p, 1996 WL 374185, at *3, *6 (July 2, 1996) (stating that sedentary work generally requires sitting for a total of six hours in an eight-hour workday).

-14-

In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and (2) "consistent with other substantial evidence in the record." *Id.* (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Id.* (quotation omitted). Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1301 (quotation omitted). After considering these factors, "the ALJ must give good reasons in [the] . . . decision for the weight he ultimately assigns the opinion." *Id.* (quotation omitted). "Finally, if the ALJ rejects the opinion

-15-

completely, he must then give specific, legitimate reasons for doing so." *Id.* (quotations omitted)

In his decision, the ALJ concluded that Dr. Cheek's opinion was "entitled to little weight." A.R. at 19. The conclusion was reasonable. To begin with, in response to the question on the evaluation form concerning the objective medical findings that support his RFC assessment, Dr. Cheek responded with only two objective medical findings: (1) decreased range of motion tests; and (2) positive straight leg raising tests. *Id.* at 165. While these are acceptable clinical techniques for evaluating a back impairment, they are insufficient, standing alone, to support a conclusion that plaintiff is incapable of performing sedentary work. Further, we find reasonable the following assessment of the ALJ regarding Dr. Cheek's opinion:

> I find his account of claimant's limitations not to be a genuine medical assessment of discrete functional limitations based upon clinically established pathologies. . . . He did not refer to reports of individual providers, hospitals, or clinics, and he did not indicate on what basis, if any, his treatment of the claimant would support his conclusions. His assessment is clearly based on the claimant's subjective complaints, which I do not find to be fully credible.

*Id.* at 19.

In sum, we conclude that the ALJ performed a proper treating physician analysis, and that he did not err in rejecting the opinion of Dr. Cheek.

-16-

## D. Ability to Perform Other Jobs.

Plaintiff's challenge to the ALJ's finding that he is capable of performing other jobs that exist in significant numbers in the national economy is based on two arguments. First, plaintiff claims the hypothetical question posed by the ALJ to the vocational expert (VE) at the hearing before the ALJ was deficient because it was based on the ALJ's incomplete RFC assessment. Second, plaintiff claims the ALJ erred by failing to analyze the necessary factors for evaluating the numerical-significance requirement. [4] As set forth above, we do not agree with plaintiff's assertion that the ALJ performed an incomplete RFC assessment. Consequently, we reject plaintiff's challenge to the hypothetical question that the ALJ posed to the VE. We agree with plaintiff, however, that the ALJ failed to properly analyze the numerical-significance requirement.

According to the governing regulations:

> [I]f your residual functional capacity is not enough to enable you to do any of your previous work, we must still decide if you can do other work. To do this, we consider your residual functional capacity, . . . age, education, and work experience. Any work (jobs) that you can do must exist in significant numbers in the national

---

[4] In his opening brief, plaintiff also asserts that there is "an apparently unresolved issue about the transferability of Plaintiff's skills." Aplt. Br. at 26. This issue is not properly before this court, as plaintiff waived it by failing to raise it during the district court proceedings. *See Crow v. Shalala*, 40 F.3d 323, 324 (10th Cir. 1994) ("Absent compelling reasons, we do not consider arguments that were not presented to the district court").

economy (either in the region where you live or in several regions of the country).

20 C.F.R. § 404.1561 (2001). The regulations further provide as follows:

[W]ork exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether – (1) Work exists in the immediate area where you live; (2) A specific job vacancy exists for you; or (3) You would be hired if you applied for work.

20 C.F.R. § 404.1566(a) (2001).

"This Circuit has never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number.'" *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992). "Our reluctance stems from our belief that each case should be evaluated on its individual merits." *Id.* Nonetheless, we have noted that several factors go into the proper evaluation of the issue:

A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on.

*Id.* (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)). On the other hand, we have also emphasized that "[t]he decision should ultimately be left to the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.*

During the hearing before ALJ, the VE testified that plaintiff has skills from his past work as a heavy equipment operator and pipeline foreman that are transferrable to "sedentary supervisor jobs," and the VE testified that there are 150 such jobs in Oklahoma and 14,000 such jobs nationally.    *See* A.R. at 217-19. The VE further testified, however, that these jobs are "not in significant numbers" in the State of Oklahoma.    *Id.* at 218.  At the hearing, the ALJ also stated on the record that these jobs may not exist in significant numbers:

> ALJ:  But the real question may be that the number of jobs . . . - - not whether he can get the job, but there must be enough jobs that he would have a fair opportunity to work in those.  150 total in the state of Oklahoma . . . is getting way down there.  I -- it just may not be a significant number.  So -- well, that's all I'll say about it.
>
> . . . .
>
> ALJ:  So if he could sit -- sitting 45 minutes at a time, six hours out of the eight -- well, I'll tell you what.  There's no need trying to beat this horse to death.  I just think there's just not enough jobs here to say - -
>
> ATTY [for plaintiff]:  I agree with you, Your Honor.
>
> ALJ:  And theoretically, he may have some skills, you know, in the pipeline construction industry that might transfer to some of these jobs, but 150 jobs in the state of Oklahoma is just not a significant number.
>
> ATTY [for plaintiff]:  Thank you, Judge.
>
> ALJ:  Okay.  Mr. Rhodes, I think your attorney can explain to you the significance of the vocational testimony we've heard here and I'll get a Decision out as soon as I can.

-19-

*Id.* at 226-27.

Despite his statements on the record during the hearing, the ALJ subsequently concluded in his decision, without any analysis or discussion of the factors set forth in *Trimiar*, that 150 jobs in the State of Oklahoma and 14,000 jobs nationally are a significant number of jobs in the economy. *Id.* at 22. However, because the ALJ failed to evaluate the *Trimiar* factors and make specific factual findings regarding the numerical-significance requirement, we cannot properly review this issue. As we recently emphasized:

> *Trimiar's* insistence on an antecedent exercise of judgment by the ALJ is not novel. On the contrary, it is consistent with, if not compelled by, our broader recognition that as a court acting within the confines of its administrative review authority, we are empowered only to review the ALJ's decision for substantial evidence and . . . we are not in a position to draw factual conclusions on behalf of the ALJ.

*Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quotations omitted). Accordingly, without expressing any opinion concerning the merits of the issue, we remand this matter to the Commissioner for a redetermination of the issue of whether the VE identified a sufficient number of jobs to satisfy the numerical-significance requirement.

-20-

The order of the district court is AFFIRMED in part and REVERSED in part, and this matter is REMANDED to the district court with instructions to remand, in turn, to the Commissioner for further proceedings consistent with this order and judgment.

Entered for the Court

John C. Porfilio
Circuit Judge